LARRY TIMMONS, Plaintiff-Appellant, v. FIRST NATIONAL BANK OF OTTAWA, Defendant-Appellee.

Third District    No. 76-405

Opinion filed April 29, 1977.

John Olivero, of Peru, for appellant.

Ernest Pool, Jr., of Pool & Pool, of Ottawa, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

An action was instituted by plaintiff Larry Timmons to recover damages in the Circuit Court of La Salle County for alleged defamation as against defendant First National Bank of Ottawa and from defendants W & W Pontiac-Cadillac, Inc., Jack Bentz and Terry Bentz. We are concerned only with the issue as to First National Bank of Ottawa as defendant in the cause. Defendant First National Bank answered plaintiff's complaint and moved for summary judgment. The motion for summary judgment was granted by the trial court. Plaintiff sought leave to file an amendment to the complaint which was subsequently denied. Plaintiff thereafter filed a motion to vacate the summary judgment entered and filed a second motion for leave to file an amendment to his complaint. The trial court denied both motions. Plaintiff appeals from the order denying the motion to vacate the summary judgment and the motion for leave to file an amendment to his complaint.

Plaintiff Larry Timmons filed his complaint on November 25, 1975, as against the defendants hereinabove referred to. The complaint alleged that on or about February 1, 1975, plaintiff's name was forged upon a retail installment contract, and that defendant W & W Pontiac-Cadillac

assigned the forged contract to defendant First National Bank, with full recourse as against W & W Pontiac-Cadillac. Under the terms of the forged contract, which was dated October 31, 1974, plaintiff purportedly purchased a certain 1975 Cadillac from defendant W & W Pontiac-Cadillac for the net sum of $10,208.64, payable on or before April 31 (*sic*), 1975. It appears that on April 18, 1975, the complete amount specified in the alleged forged contract was paid to defendant First National Bank by the defendant W & W Pontiac-Cadillac.

Plaintiff's complaint contains three counts as against defendant First National Bank. These counts alleged that on or about February 1, 1975, the defendant-bank maliciously and recklessly communicated by letter to the Ottawa Credit Bureau certain credit information about plaintiff, including information about the installment note assigned by W & W Pontiac-Cadillac. Plaintiff alleged that the information, so communicated, conveyed the impression that plaintiff wrongfully refused to pay notes which he had signed, and that republication of the statements by the Ottawa Credit Bureau caused the Farmer's Home Loan Administration and other financial institutions to refuse to loan money to plaintiff for the purchase of a home. Plaintiff's three counts against defendant-bank sought (1) special damages for plaintiff's injury of being unable to obtain a loan, (2) damages for injury to plaintiff's reputation and good standing in the community, and (3) punitive damages.

On March 17, 1976, defendant First National Bank moved to strike the counts of the complaint against it on the grounds that the alleged letter was not attached to plaintiff's complaint and did not otherwise meet the requirements of section 36 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 36). Defendant's motion to strike was denied. On March 26, 1976, the trial court, pursuant to the motion of First National Bank ordered plaintiff to produce the letter allegedly written by defendant First National Bank to the Ottawa Credit Bureau. Plaintiff then served a request to produce upon defendant First National Bank, and in response defendant First National Bank certified that it sent out no statements or correspondence mentioning plaintiff.

On April 26, 1976, defendant First National Bank filed a motion for summary judgment, on the grounds that defendant had denied ever writing any letter as alleged by plaintiff and that plaintiff had failed to produce any such letter. In an affidavit accompanying the motion for summary judgment, an official of defendant First National Bank stated that in the latter part of April, 1975, defendant First National Bank received a telephone inquiry from Ottawa Credit Bureau concerning the credit standing of plaintiff, and that in response the Ottawa Credit Bureau was informed that the only then outstanding loan to plaintiff was an installment note dated July 31, 1974, on which payments were fully

current, and that such loan was in the opinion of the defendant First National Bank an account of the highest possible rating, and as to the note assigned by W & W Pontiac-Cadillac, that it was paid prior to maturity by W & W Pontiac-Cadillac. Defendant's motion also argued that the information given "was not of a false or defamatory nature but was in fact salutory [*sic*] of the plaintiff." No affidavits or other documents in opposition were filed by plaintiff.

A hearing on the motion for summary judgment was held on April 30, 1976, and such motion was granted. At the April 30 hearing, plaintiff sought to file a motion for leave to file an amendment to the complaint and apparently tendered or filed a copy of the proposed amended complaint. By order filed May 3, 1976, the trial court granted summary judgment in favor of defendant First National Bank. The order found that defendant First National Bank was entitled to the summary judgment because defendant denied writing any such letter, no letter was ever produced by plaintiff, and that the information transmitted to the Ottawa Credit Bureau by defendant by telephone "was not of a false or defamatory nature, but was in fact salutory of Plaintiff." The court also disposed of the motion presented, after the order for summary judgment. The court also found that no defamation was shown by the telephone conference statements of the bank officer. Plaintiff contended, and still contends apparently, that the phone conversation itself was defamatory. No document or affidavit, however, was filed to support this contention.

On May 12, 1976, defendant First National Bank filed objections to plaintiff's motion for leave to amend. On May 14, 1976, the trial court entered an order denying plaintiff's motion for leave to amend the complaint. On June 1, 1976, plaintiff filed a motion to vacate the summary judgment in favor of defendant First National Bank and a hearing was held on the motion on July 14, 1976. On July 20, 1976, the trial court entered an order denying plaintiff's motion to vacate the summary judgment, and also denied a second motion for leave to amend which had been filed by plaintiff. This motion, in effect, sought to change the basis of plaintiff's action as against defendant from libel to slander, based upon the statements contained in the affidavit in support of the motion for summary judgment, filed by defendant. The trial court noted that the telephone statements of the bank officer were not defamatory in any respect.

Plaintiff contends that the court should have granted him leave to amend the complaint to state a cause of action in slander, as opposed to libel, as against the bank. While it does not appear of record whether, at the hearing on defendant First National Bank's motion for summary judgment on April 30, 1976, the trial court ordered preparation of a written form of judgment, it does appear that a written order of the trial

court granting summary judgment for defendant was filed on May 3, 1976. The trial court had refused to consider the motion at the time of the hearing on the summary judgment motion for the reason that no notice had been given of the attempt to amend.

■■ As stated in *Banks v. United Insurance Co. of America* (1st Dist. 1975), 28 Ill. App. 3d 60, 63-64, 328 N.E.2d 167, 170:

> "Section 46 of the Civil Practice Act permits the amendment of pleadings at any time before final judgment to change or add a cause of action or defense, 'on just and reasonable terms.' [Citation.] The section is phrased broadly, reinforcing the general imperative of section 4 that the Act is to be liberally construed '* * * to the end that controversies may be speedily and finally determined according to the substantive rights of the parties.' [Citation.]
>
>> 'This philosophy of construction precludes the determination of the rights of parties litigant upon the technicalities of pleading when such rights may, within the letter and spirit of the act, be adjudicated on their merits.' *Fleshner v. Copeland* (1958), 13 Ill. 2d 72, 77, 147 N.E.2d 329.
>
> The power to allow amendments should be freely used so that a party may fully present his case. [Citation.] Despite this extensive freedom, a party has no absolute right to amend his pleading. It is for the trial court to decide, in the first instance and in the exercise of sound discretion, whether to allow a proposed amendment. The appellate court will intervene only if, having view of the peculiar facts and circumstances of a case and the impact upon all the parties of permitting or not permitting the motion, it determines that the initial ruling does not further the ends of justice. [Citation.]"

As otherwise stated in *Anger v. Gottfried* (1st Dist. 1975), 29 Ill. App. 3d 559, 563, 331 N.E.2d 576:

> "The allowing of amendments to pleadings is within the sound discretion of the trial court, and its decision will not be disturbed on review unless there is an abuse thereof."

■■ The form of amended complaint which plaintiff requested leave to file would have charged that the defendant-bank slandered plaintiff by its communication to the Ottawa Credit Bureau in the telephone conversation. Pertinently, the law of slander is discussed in *Kirk v. Village of Hillcrest* (2d Dist. 1975), 31 Ill. App. 3d 1063, 1065, 335 N.E.2d 535, where the court states:

> "Illinois follows the common law rule that slander *per se* is the speaking of defamatory words which impute (1) the commission

of a criminal offense or (2) an infection with a communicable disease which, if true, would exclude one from society or (3) inability to perform or want of integrity in the discharge of duties of office or employment or (4) are such as to prejudice a particular person in his profession or trade. (Illinois has added two other categories by statute which are not here relevant.) Defamatory language coming within these categories does not require proof of actual damage in order to recover. The damage is legally presumed. [Citations.]

In the case of language not falling within the categories set out above and therefore not slanderous *per se* such utterances may still be actionable as being slanderous *per quod* if actually defamatory, and if specific damage is alleged. In some jurisdictions it has been held that words not otherwise defamatory may be shown to be so by innuendo or explanation. This doctrine, however, is not the law of Illinois. The innocent construction rule has been adopted in Illinois by the ruling of our supreme court in *John v. Tribune Co.*, 24 Ill. 2d 437."

■■ It is clear from an inspection of the proposed amended complaint that it would have attempted, at the most, to state a cause of action for slander *per quod*, and included allegations of special damages to plaintiff. The Illinois Supreme Court stated in *Valentine v. North American Co.* (1974), 60 Ill. 2d 168, 170-71, 328 N.E.2d 265:

"In an action for defamation based upon spoken words, the danger exists not only that certain words will become the focal point of the litigation divorced from the context in which they were used, but also that the words themselves, upon which attention is focused, are not the actual words uttered by the alleged defamer, but instead represent another's interpretation or conclusion drawn therefrom.

The opinion of the appellate court correctly concluded that the legal effect of this statement cannot be considered independently from the remainder of [defendant's] * * * conversation, but that the intent and meaning of the statement must be determined from the context of [defendant's] * * * entire statement. See Restatement of Torts, sec. 563, Comment d (1938); Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 111, at 748."

Accordingly, we note that the statements relied upon in the amended complaint are the statements made in the affidavit accompanying defendant's motion for summary judgment. In the order granting summary judgment, the trial court found that the information communicated by defendant in the telephone statements, as submitted in the affidavit, which remained uncontradicted, was "not of a false or

defamatory nature, but was in fact salutory of the Plaintiff." The court properly observed that nothing defamatory was said in the telephone statements of the officer for defendant-bank. In such circumstances, plaintiff was required to sustain a greater burden than the addition of an unsupported allegation before being able to establish that a trial court abused its discretion in granting summary judgment and in refusing plaintiff leave to file such amended complaint. We, therefore, conclude that we are unable to find that the trial court abused its discretion in denying such leave to file the amended complaint, or in refusing to vacate the summary judgment entered.

In view of our disposition of this cause we do not believe it is necessary to discuss the contention of defendant that the statements made were conditionally privileged. For the reasons stated, therefore, we conclude that the judgment of the Circuit Court of La Salle County should be, and is, accordingly, affirmed.

Affirmed.

STENGEL, P. J., and SCOTT, J., concur.