(No. 46527.-

JOHN J. VALENTINE, Appellant, v. NORTH AMERI-
CAN COMPANY FOR LIFE AND HEALTH INSUR-
ANCE *et al.,* Appellees.

*Opinion filed November 27, 1974.*

WARD, J., UNDERWOOD, C.J., and SCHAEFER, J., dissenting.

W. Thomas Johnston and Thomas B. Kennedy, Sr., of
McConnell, Kennedy, Quinn & Morris, of Peoria, for
appellant.

John E. Cassidy, Jr., of Cassidy, Cassidy & Mueller, of Peoria, for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiff, John Valentine, filed a suit in the circuit court of Peoria County against North American Company for Life and Health Insurance, a corporation, and Gerald Kaufman, charging that he had been slandered by the utterance of words which had prejudiced him in his business or calling. The trial court held that the words used were slanderous *per se* and so instructed the jury. A verdict was rendered assessing damages against the defendants in the sum of $5,000 as compensatory damages and $10,000 as punitive damages. The appellate court reversed the judgment for the plaintiff. (16 Ill. App. 3d 277.) We granted leave to appeal.

The plaintiff, since 1964, had been a successful life insurance salesman in the Peoria area. In December, 1969, he was hired as a general agent for North American Company for Life and Health Insurance. In April, 1970, the company entered into a new agency agreement with plaintiff, executed a long-term lease for office space to be occupied by the plaintiff, and purchased about $10,000 worth of furniture which the plaintiff had selected. Also, North American had agreed to pay $825 per month for office expenses.

On August 10, 1970, North American wrote to plaintiff and informed him that it was dissatisfied with the results he was producing and warned that unless he improved his representation of the company the agency arrangement would be terminated. The agency agreement contained a clause which permitted either party to terminate it by giving the other party 30 days' written notice. On August 31, 1970, defendant Kaufman, an assistant secretary of North American, went to Peoria for the purpose of closing the agency. On the following day,

he met with plaintiff, and informed him that the company was terminating the agency. The plaintiff was given written notice as required by the agreement that the agency would be terminated on October 5, 1970.

Kaufman then contacted David Simons, a real-estate broker, for the purpose of subleasing the office which the plaintiff had occupied. Kaufman informed Simons that plaintiff was the present tenant and that he was being evicted. Kaufman then allegedly said *"He was a lousy agent,"* and that he was being discharged by the company. During the conversation Kaufman said that plaintiff had spent too much money for furniture, that he did not devote his time to North American's business, that he devoted his time to other endeavors, and that he had not done for the company the things he was supposed to have done. Simons testified that he had no great love for the plaintiff and that a few days later, when he saw him, he told the plaintiff what Kaufman had said. Simons stated: "I thought I'd burn him a little bit." It is plaintiff's contention that the words "He was a lousy agent" are slanderous *per se,* because these words were injurious to plaintiff in his profession. Thus, he contends, the slander falls within the four categories which require no allegation or proof of special damages. See *Whitby v. Associates Discount Corp.,* 59 Ill. App. 2d 337, 340.

In an action for defamation based on spoken words, the danger exists not only that certain words will become the focal point of the litigation divorced from the context in which they were used, but also that the words themselves, upon which attention is focused, are not the actual words uttered by the alleged defamer, but instead represent another's interpretation or conclusion drawn therefrom.

The opinion of the appellate court correctly concluded that the legal effect of this statement cannot be considered independently from the remainder of Kaufman's conversation, but that the intent and meaning of the

statement must be determined from the context of Kaufman's entire statement. See Restatement of Torts, sec. 563, Comment d (1938); Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 111, at 748.

The principle is well established that statements are not to be considered slanderous *per se* if the words complained of are capable of an innocent construction. This court in applying the innocent-construction rule stated: "That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (*John v. Tribune Co.,* 24 Ill.2d 437, 442.) Since the decision in *John,* the innocent-construction rule has been consistently applied by the appellate courts in this State. See *Hambric v. Field Enterprises, Inc.,* 46 Ill. App. 2d 355; *Proesel v. Myers Publishing Co.,* 48 Ill. App. 2d 402; *Archibald v. Belleville News Democrat,* 54 Ill. App. 2d 38; *Whitby v. Associates Discount Corp.,* 59 Ill. App. 2d 337; *Mitchell v. Peoria Journal-Star, Inc.,* 76 Ill. App. 2d 154; *Van Tuil v. Carroll,* 3 Ill. App. 3d, 869; *Conrad v. Logan,* 4 Ill. App. 3d 981; *Ashe v. Hatfield,* 13 Ill. App. 3d 214.

Whether the language used is susceptible of an innocent construction is a question of law to be resolved by the courts. *Zeinfeld v. Hayes Freight Lines, Inc.,* 41 Ill.2d 345; *John v. Tribune Co.*

Judging the statement in the context of Kaufman's other comments as to why the company was terminating the plaintiff's agency, we conclude that the words "he was a lousy agent" are capable of being innocently construed to mean that the plaintiff did not properly or satisfactorily represent the company and that there had been a "lousy" or generally unsatisfactory agency relationship. The statement in context does not necessarily imply plaintiff's lack of qualifications or skill in his calling. Under the innocent-construction rule we must as a matter of law declare that

these words are not slanderous *per se.*

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD, dissenting:

I cannot accept the majority's conclusion that the statement "he was a lousy agent" can be innocently construed to mean that there was a "generally unsatisfactory agency relationship" between the plaintiff and his employer.

The majority not unreasonably first says that the intent and meaning of the statement must be determined from the context of Kaufman's statement, but it proceeds to ignore the context in which the plaintiff was said to have been a lousy ("miserably poor or inferior"—Webster's Third New International Dictionary 1339 (1961)) agent. I say the majority ignores the context, because its opinion shows that Kaufman, after stating that the plaintiff was a lousy agent, went on to say that the plaintiff was being discharged by the defendant company. The opinion continues, saying that during the conversation with Simons, Kaufman had said that the plaintiff had spent too much money for furniture, had not devoted his time to North American's business but had spent his time in other endeavors and had not done the things for his employer he was supposed to have done. From the setting of Kaufman's statement it is clear that he was referring to the plaintiff in his capacity or business as an insurance agent.

I also find it clear that Kaufman was describing the plaintiff as being lousy in that capacity. Equating the open and straightforward expression "lousy agent" with the majority's ambiguous "generally unsatisfactory agency relationship" is, it seems to me, a severe distortion of language.

I consider the "innocent construction rule" from *John v. Tribune Co.,* 24 Ill.2d 437, 442 (which I read as an *obiter dictum*) has no place here. This court said in *John*

that words are to be "given their natural and obvious meaning." I think few will say the majority has given "lousy" its natural and obvious meaning.

UNDERWOOD, C.J., and SCHAEFER, J., join in this dissent.