(No. 78669.—

ELISABETH ANDERSON, Appellee, v. RONALD VANDEN DORPEL *et al.*, Appellants.

*Opinion filed April 18, 1996.*

402

HARRISON, J., joined by FREEMAN, J., dissenting.

Frederic J. Artwick, Anne E. Rea and Mark B. Blocker, of Sidley & Austin, of Chicago, and Thomas G. Cline, of Evanston, for appellants.

Aron D. Robinson and Robert A. Holstein, of Holstein, Mack & Klein, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Elisabeth Anderson, brought the present action in the circuit court of Cook County against defendants, Ronald Vanden Dorpel and Northwestern

University. Vanden Dorpel was Anderson's supervisor at Northwestern and allegedly made defamatory remarks about her to a prospective employer. Anderson sought recovery under theories of defamation and interference with prospective economic advantage. On the defendants' motion, the circuit court dismissed those counts pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). The appellate court reversed, finding that the plaintiff stated causes of action under both theories, and remanded the cause for further proceedings. 268 Ill. App. 3d 907. We allowed the defendants' petition for leave to appeal (155 Ill. 2d R. 315(a)), and we now reverse the judgment of the appellate court.

The present appeal is before us on the pleadings, and the facts alleged by the plaintiff and the procedural history of the case may be stated briefly. The plaintiff was employed by defendant Northwestern University in 1989, where she had worked for nine years as its director of corporate relations. In that capacity she raised funds from corporations. According to the allegations in the plaintiff's first-amended complaint, which forms the basis for the claims at issue here, in November 1989 someone from the Young Men's Christian Association of Metropolitan Chicago (YMCA) approached the plaintiff, who was not then looking for a job, about a comparable position in the fund-raising department of the YMCA. The plaintiff had been recommended for the job by a member of the YMCA's board of trustees. The plaintiff was interviewed for the position on November 20, 1989, by Carmelita Gallo, director of personnel for the YMCA, and by Almarie Wagner, YMCA senior vice president. Further interviews were then scheduled for December 6 and 8, 1989, with absent members of the board of trustees. Plaintiff was told that her initial interviews had gone well and that she was being seriously considered

for the position. The plaintiff alleges that as of December 6, she was the leading candidate for the job. She was interviewed on December 6, 1989, by Steven Crown, the YMCA's director, and was assured that the interview had gone well. The plaintiff learned that she was recommended or was going to be recommended for hiring by persons who interviewed her after she completed a follow-up interview on Friday, December 8.

Between Wednesday, December 6, and Thursday, December 7, Crown spoke with Ronald Vanden Dorpel about the plaintiff. Vanden Dorpel was Northwestern's vice-president of university development and alumni relations and was the plaintiff's supervisor. According to the plaintiff's complaint, Vanden Dorpel told Crown that the plaintiff "did not follow up on assignments" and that "she could not get along with her coworkers." On Thursday, December 7, someone from the YMCA called plaintiff to cancel interviews that had been scheduled for Friday, December 8, and Monday, December 11. The plaintiff alleged that Vanden Dorpel's comments were false and were made in violation of a Northwestern policy limiting the amount of information that may be provided to others. The plaintiff further alleged that Vanden Dorpel asked her to leave her employment with Northwestern in January 1990, though the present action does not involve that decision.

The plaintiff instituted the present action on December 5, 1990, by filing a complaint in the circuit court of Cook County. She sought recovery from the defendants under several different theories, including the two at issue here, intentional interference with prospective economic advantage and defamation. The defendants moved to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) for failure to make a claim for which

relief may be granted. The trial judge dismissed the intentional interference and defamation counts without prejudice.

The plaintiff filed an amended complaint on June 14, 1991, again alleging theories of intentional interference with prospective economic advantage and defamation. Once more the defendants moved to dismiss the complaint pursuant to section 2—615. The trial judge dismissed the intentional interference count with prejudice and entered a Rule 304(a) finding enabling the plaintiff to immediately appeal the ruling. The trial judge denied the defendants' motion to dismiss the defamation count, however, and dismissed without prejudice a third count. The plaintiff then filed a second-amended complaint, realleging the defamation count and providing new allegations in support of the third count. The defendants moved for reconsideration of the prior ruling denying their motion to dismiss the defamation count, and moved for dismissal with prejudice of the third count as well. The trial judge granted the motion and dismissed both counts with prejudice. The plaintiff appealed from that ruling. Before the appellate court, the plaintiff apparently did not challenge the dismissal of the third count, and it is not at issue in the appeal to this court.

The appellate court consolidated the plaintiff's appeal from the dismissal of the defamation count with her earlier appeal from the dismissal of the intentional interference count, reversed the judgment of the circuit court, and remanded the cause for further proceedings. 268 Ill. App. 3d 907. With respect to the claim for intentional interference with prospective economic advantage, the appellate court concluded that the plaintiff had a reasonable expectancy of being hired by the YMCA and that, as alleged, the comments made by Vanden Dorpel to Crown could therefore have interfered

with her realizing that benefit. 268 Ill. App. 3d at 913. With respect to the defamation count, the appellate court found that defendant Vanden Dorpel's alleged comment on the plaintiff's inability to get along with others was subject to an innocent construction and therefore not actionable. The appellate court believed, however, that the comment regarding the plaintiff's failure to follow up on assignments was not subject to an innocent construction. 268 Ill. App. 3d at 916-17. The court also concluded that neither count was barred by the conditional privilege asserted by the defendants. We allowed the defendants' petition for leave to appeal. 155 Ill. 2d R. 315(a).

## I. Intentional Interference with Prospective Economic Advantage

We consider first the plaintiff's claim, under count I of the first-amended complaint, seeking recovery under a theory of intentional interference with prospective economic advantage. The defendants argue that the plaintiff did not have a reasonable expectancy of gaining employment with the YMCA and that she therefore cannot state a cause of action under that theory. The defendants contend that the appellate court's decision sustaining the intentional interference count conflicts with a number of other decisions that have denied recovery in similar circumstances and will dissuade employers from providing candid assessments of their employees.

To state a cause of action for intentional interference with prospective economic advantage, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's

interference. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511 (1991). The dispute here centers on the first element of the tort, whether the plaintiff had a reasonable expectancy. The defendants argue that a mere interviewee for a job cannot claim a reasonable expectancy in the position for purposes of a tortious interference claim and must possess more than a hope of employment with a prospective employer to state a cause of action under this theory. The defendants observe that the plaintiff had not completed all the scheduled interviews for this position when her candidacy ended. The defendants note further that current job holders have been denied relief in circumstances even more favorable than those shown here, and the defendants believe that allowing a job applicant to enjoy greater protection would be anomalous.

The case is before us following the dismissal of the plaintiff's complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). A motion to dismiss under section 2—615 challenges only the legal sufficiency of the complaint and admits the truth of all well-pleaded factual allegations. *Doe v. Calumet City*, 161 Ill. 2d 374, 381 (1994). "The question presented by a motion to dismiss under section 2—615 is whether sufficient facts are contained in the pleadings which, if proved, would entitle the plaintiff to relief." *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991).

Without determining here whether in all cases a job applicant must have had a firm offer in hand to state a cause of action for intentional interference with prospective economic advantage, we believe that the facts alleged in the present case fall short of what is necessary to state a claim under that theory. The allegations in the first-amended complaint—and repeated in the second-amended complaint—demonstrate nothing more than that the plaintiff was a candidate for a position

with the YMCA and that she was scheduled for further interviews at the time her candidacy came to an end. The hope of receiving a job offer is not a sufficient expectancy. See *Buchanan v. Serbin Fashions, Inc.*, 698 F. Supp. 731, 734 (N.D. Ill. 1988); see also *Chapman v. Crown Glass Corp.*, 197 Ill. App. 3d 995, 1010 (1990).

Although the plaintiff alleges in the complaint that she was the "leading candidate" for the YMCA position, that she had been assured that her interviews had gone well and that she was being "seriously considered" for the job, and that those who had interviewed her were going to recommend that she be hired, we find these additional allegations to be unavailing. First, while the plaintiff's progression past the initial series of interviews speaks well of her candidacy, it does not by itself demonstrate a reasonable expectancy of employment. Just as informal assurances of good will do not by themselves constitute contractual obligations (*Titchener v. Avery Coonley School*, 39 Ill. App. 3d 871, 875 (1976)), favorable comments of the type allegedly made to this plaintiff should not be regarded as giving rise to a legally protectible expectancy. As the trial judge noted during the hearing at which he dismissed without prejudice this count of the original complaint, "Generally people don't tell you that interviews went badly."

In opposing a motion for dismissal under section 2—615 of the Code of Civil Procedure, a plaintiff cannot rely simply on mere conclusions of law or fact unsupported by specific factual allegations. *Doe*, 161 Ill. 2d at 385; *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 289 (1990). Illinois is, moreover, a fact-pleading jurisdiction, and a plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action being asserted. *Teter v. Clemens*, 112 Ill. 2d 252, 256 (1986). The plaintiff's declaration that she was the "leading candidate" for the YMCA position

on December 6, 1989, seems to rest on nothing more than her own subjective belief. She does not attribute that assessment to any person at the YMCA or allege any facts that would support that conclusion. Nor does the plaintiff identify the person or persons who, she says, told her that her interviews had gone well, assured her that she was being "seriously considered" for the position, and stated that they were going to recommend her for hiring. As the defendants observe, the paucity of detail here stands in sharp contrast to the wealth of information provided by the plaintiff in support of other allegations in her complaint: for example, she elsewhere identifies the person who first approached her about a position with the YMCA, the persons who interviewed her there, and the person who put YMCA director Steven Crown in touch with defendant Vanden Dorpel, her supervisor at Northwestern. The assertions concerning the strength of the plaintiff's candidacy might ultimately rest on nothing more than her own subjective impressions, and the absence of detail demonstrates the conclusory nature of those allegations.

Even in circumstances more favorable to the employee than those alleged here, Illinois courts have refused to find a sufficiently strong expectancy that would sustain a cause of action for intentional interference with prospective economic advantage. Thus, in *Werblood v. Columbia College*, 180 Ill. App. 3d 967 (1989), the court determined that the plaintiff's expectation of a renewal of her current college employment contract was not sufficient to support a cause of action for intentional interference, even though officials of her college had assured her that her employment there was secure. Similarly, in *Williams v. Weaver*, 145 Ill. App. 3d 562 (1986), the court held that a person employed under a renewable contract did not enjoy a sufficient expectancy of continued employment.

*Malatesta v. Leichter*, 186 Ill. App. 3d 602 (1989), cited by the plaintiff, is not to the contrary. In that case the plaintiff, seeking to purchase a Chevrolet dealership, obtained recovery against the defendant on a theory of intentional interference with prospective economic advantage. The plaintiff and the current owner had entered into a buy-sell agreement for the plaintiff's purchase of the assets of the dealership; the parties required the approval of General Motors for transfer of the franchise. According to the plaintiff's evidence, the defendant made comments about the plaintiff that led General Motors to refuse to approve the transfer of the franchise to the plaintiff. In upholding a judgment in favor of the plaintiff, the appellate court concluded that the verdict was not against the manifest weight of the evidence and that the testimony supported the finding that the plaintiff had had a reasonable expectancy of obtaining the dealership. With regard to the plaintiff's expectancy, the appellate court found sufficient evidence from which the jury could have concluded "that plaintiff was the leading candidate for the dealership." *Malatesta*, 186 Ill. App. 3d at 617. The court noted that the plaintiff was the sole applicant who had entered into a contract with the current owner of the dealership, and the court cited one General Motors executive's statement that the plaintiff was the prime candidate because of the buy-sell agreement. The appellate court also referred to evidence showing that the plaintiff was denied approval only because the corporation believed the defendant's misrepresentation concerning the plaintiff. *Malatesta*, 186 Ill. App. 3d at 617-18.

The allegations made in the case at bar are far different from the evidence that was found sufficient to support the jury's verdict in *Malatesta*. The well-pleaded allegations in the present case show merely that the plaintiff had undergone several interviews for the

YMCA position and that she had been invited back for further interviews before her candidacy came to an end. To hold that the plaintiff's complaint states a cause of action for intentional interference with prospective economic advantage would considerably broaden the scope of the tort. Under the plaintiff's reasoning, the potential class of litigants could include all persons who interview for a particular job, and anyone supplying a negative reference to a prospective employer might conceivably find himself or herself subject to an action for intentional interference with prospective economic advantage. We do not believe that such an expansion of the cause of action is warranted.

## II. Defamation

Count II of the plaintiff's first-amended complaint sought recovery on a defamation theory. The plaintiff alleged that she was defamed by Vanden Dorpel's statement to Crown, the YMCA's director, that the plaintiff could not get along with her coworkers and that she did not follow up on assignments. The trial judge eventually dismissed this portion of the complaint with prejudice, concluding that the statements were subject to an innocent construction and hence not defamatory *per se*. As we have noted, the appellate court agreed with the trial judge that the alleged remark concerning the plaintiff's inability to get along with coworkers could be innocently construed. The appellate court reached a different conclusion, however, with respect to the comment regarding the plaintiff's failure to follow up on assignments, and found that it could not be innocently construed. The plaintiff raises no challenge before this court to the appellate court's resolution of the comment concerning her relations with her coworkers.

To be considered defamatory *per se*, the challenged statement "must be so obviously and naturally harmful to the person to whom it refers that a showing of special

damages is unnecessary." *Owen v. Carr*, 113 Ill. 2d 273, 277 (1986). In the present case, the plaintiff argues that the comment on her failure to follow up on assignments fits within two categories considered adequate under common law to sustain an action for defamation *per se*: language that imputes an inability to perform or want of integrity in the discharge of duties of office or employment, and language that prejudices a party, or imputes a lack of ability, in his or her trade, profession, or business (*Owen*, 113 Ill. 2d at 277; *Fried v. Jacobson*, 99 Ill. 2d 24, 27 (1983)).

Even if the challenged statement fits within one of the recognized categories that will sustain a *per se* action, recovery will not be allowed if the statement can reasonably be given an innocent construction. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992); *Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402, 414 (1988). The innocent construction rule originated as *dicta* in *John v. Tribune Co.*, 24 Ill. 2d 437, 442-43 (1962). *Mittelman v. Witous*, 135 Ill. 2d 220, 231 (1989); *Owen*, 113 Ill. 2d at 278. In *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982), this court reaffirmed the rule, while making explicit the requirement that an innocent construction must be reasonable for the rule to be applicable:

> "We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*." *Chapski*, 92 Ill. 2d at 352.

The innocent construction rule applies only to actions for defamation *per se*. *Mittelman*, 135 Ill. 2d at 232-33. "The rigorous standard of the modified innocent construction rule favors defendants in *per se* actions in that a nondefamatory interpretation must be adopted *if*

it is *reasonable*. The tougher standard is warranted because of the presumption of damages in *per se* actions." (Emphasis in original.) *Mittelman,* 135 Ill. 2d at 234. Whether a statement is capable of an innocent construction is a question of law. *Chapski,* 92 Ill. 2d at 352; *Zeinfeld v. Hayes Freight Lines, Inc.,* 41 Ill. 2d 345, 347-48 (1968). We believe that Vanden Dorpel's alleged comment regarding the plaintiff's failure to follow up on assignments may be innocently construed and hence may not form the basis for a *per se* action. We agree with the defendants that the remark, construed in context, may be understood to mean simply that the plaintiff did not fit in with the organization of the employer making the assessment and failed to perform well in that particular job setting, and not as a comment on her ability to perform in other, future positions.

Other courts considering analogous comments have found them to be capable of an innocent construction and hence not defamatory *per se*. For example, in *Valentine v. North American Co. for Life & Health Insurance,* 60 Ill. 2d 168 (1974), the defendant terminated an insurance agency relationship with the plaintiff. One of the defendant's representatives, in speaking with a real estate broker about finding a new tenant for the plaintiff's former office, told the broker that the plaintiff was "a lousy agent" and was being discharged by the company. The defendant's representative also stated that the plaintiff had spent too much money on office furniture, did not devote sufficient time to the defendant's business, devoted time to other things, and failed to do what he should have done. *Valentine,* 60 Ill. 2d at 170. The plaintiff sued the defendant, contending that the comment that he was a lousy agent was defamatory *per se*. This court concluded that the comment was subject to an innocent construction and therefore not actionable under a *per se* theory. The court explained:

"Judging the statement in the context of [the real estate broker's] other comments as to why the company was terminating the plaintiff's agency, we conclude that the words 'he was a lousy agent' are capable of being innocently construed to mean that the plaintiff did not properly or satisfactorily represent the company and that there had been a 'lousy' or generally unsatisfactory agency relationship. The statement in context does not necessarily imply plaintiff's lack of qualifications or skill in his calling." *Valentine*, 60 Ill. 2d at 171.

*Valentine* may be contrasted with *Mittelman v. Witous*, 135 Ill. 2d 220, 247-48 (1989), in which a law firm partner's comment blaming an associate for the mishandling of an important case and, in essence, charging the associate with professional negligence could not be innocently construed as merely a negative evaluation of the associate's strategic approach to the matter.

Our appellate court has also determined that statements similar to the one at issue here regarding a person's job performance in a particular setting may be given an innocent construction. For example, in *Taradash v. Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 317-18 (1993), the court considered a comment that an employee was terminated for "lack of performance" and concluded that the remark was subject to an innocent construction. The court noted the variety of possible reasons for the employee's lack of performance, including conditions in the industry, the assessment of his performance against unrealistic standards, and the existence of some other conflict preventing the employee from meeting the employer's standards. In *Marczak v. Drexel National Bank*, 186 Ill. App. 3d 640, 643-45 (1989), an employee termination report stated that the plaintiff " 'did not perform up to the high standards expected of officers of the Bank,' " had problems getting along with others, was at times uncooperative, and recently refused to perform a task. The court found that the report could be construed to mean simply that the

employee did not fit in and that her services were no longer required. Similarly, in *Kakuris v. Klein*, 88 Ill. App. 3d 597, 600 (1980), an employer's statements that the employee exhibited a " '[l]ack of achievement in basic goals' " and " 'did not have the qualifications needed to achieve the objectives of the profession' " were found to be subject to an innocent construction; the court believed that the statements could be understood as pertaining to the employee's past performance in that specific position, and not to his future performance for a different employer. See also *Powers v. Delnor Hospital*, 148 Ill. App. 3d 844, 847 (1986); *Heying v. Simonaitis*, 126 Ill. App. 3d 157, 165 (1984).

The statement alleged here regarding the plaintiff's failure to follow up on assignments is similarly subject to an innocent construction. Like the comments· in the preceding cases, the remark here may reasonably be understood as signifying nothing more than that the plaintiff did not fit in with Northwestern's organization and perform well in that particular position. Such an interpretation is reinforced when the comment is considered in context, as it must be. See *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982). Vanden Dorpel also allegedly said that the plaintiff had difficulty in getting along with others, a statement that would further serve to anchor his comments in the conditions and circumstances of the plaintiff's employment at Northwestern. As we have noted, the appellate court agreed with the trial judge that this additional comment is subject to an innocent construction, and the plaintiff does not challenge that determination.

Nor do we agree with the plaintiff that the precedential value of *Valentine* and *Kakuris*, discussed above, is diminished because those cases preceded the decision in *Chapski*, and that opinion's express recognition that an innocent construction must be reasonable. As the ap-

pellate court observed in *Harris Trust & Savings Bank v. Phillips*, 154 Ill. App. 3d 574, 581 (1987), "it is hardly tenable that prior to *Chapski* an innocent construction could be *unreasonable*. In short, a *reasonable* innocent construction was always the mandate of *John v. Tribune Co.* and was applied in the numerous defamation cases which are *John's* progeny." (Emphasis in original.) We believe that the statement challenged here may reasonably be given an innocent construction, and therefore we must conclude that it will not support an action for defamation *per se*.

The plaintiff raises the alternative contention that she has successfully pleaded an action for defamation *per quod*. We do not agree. "Statements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain the defamatory meaning." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992). Without addressing here the defendants' argument that the plaintiff waived this issue by failing to raise it on appeal to the appellate court, where she was the appellant (see *Hammond v. North American Asbestos Corp.*, 97 Ill. 2d 195, 209 (1983)), we conclude that the plaintiff has failed to plead a cause of action under this additional theory. A *per quod* action requires allegations of extrinsic facts showing the defamatory nature of the language, as well as allegations of specific facts establishing the plaintiff's special damages. *Rosner v. Field Enterprises, Inc.*, 205 Ill. App. 3d 769, 790 (1990). The plaintiff has not adequately pleaded those elements. Her first amended complaint contains no extrinsic facts establishing that Vanden Dorpel's alleged comment was interpreted as being defamatory. Nor does the complaint set forth specific allegations of special damages; it mentions only that the plaintiff "has been damaged monetarily by losing gainful employment and wages" and

that she "has suffered great mental pain and anguish and incurred great expense for the treatment thereof." Vague allegations like those have not been found to be sufficient. *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 733 (1990).

\* \* \*

Given our result in this case, we have no occasion to consider the defendants' argument that recovery under both theories alleged here—intentional interference with prospective economic advantage and defamation—is precluded because the comments in question were conditionally privileged. For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE HARRISON, dissenting:

I believe that Elisabeth Anderson properly stated a cause of action for intentional interference with prospective business advantage. Although no formal job offer had been extended to her, that was not required. All that was necessary was that she have a *reasonable expectancy* of employment.

The majority dismisses Anderson's employment prospects with the YMCA as involving nothing more than mere hope. This characterization is completely inaccurate. According to the allegations of her complaint, which we must accept as true, Anderson had been specifically solicited for the fund-raising position there; she was the leading candidate for the position following successful completion of interviews with the YMCA's personnel director, senior vice-president and director; and she had already been recommended for the job or was going to be recommended for the job after a final follow-up interview.

Contrary to what my colleagues claim, these allegations are sufficiently specific to withstand a motion to dismiss under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). The absence of additional details is not fatal to Anderson's complaint. Under the Code, a plaintiff is not required to set out the particular evidence on which her complaint is based. The Code provides simply that the complaint "shall contain a plain and concise statement of the pleader's cause of action." 735 ILCS 5/2—603 (West 1992). According to the Code, "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2—612(b) (West 1992).

There is no mechanical formula for applying these standards in a particular case, but the guiding principle is that pleadings must be construed liberally with the ultimate goal of doing substantial justice between the parties. 735 ILCS 5/2—603(c) (West 1994); *Gonzalez v. Thorek Hospital & Medical Center* (1991), 143 Ill. 2d 28, 34-35. The majority's disposition not only fails to adhere to this principle, it does not even acknowledge that the principle exists. In so doing, it subjects Anderson's complaint to a level of scrutiny that the law will not countenance.

There is no reason Vanden Dorpel and Northwestern University should receive the deferential treatment afforded them by my colleagues. Even from a purely pragmatic point of view, adherence to the law will not place the defendants in any special or immediate peril. We are, after all, still at the beginning of the litigation process. If Anderson cannot substantiate her claims, Vanden Dorpel and Northwestern University will have ample opportunity to challenge her allegations through summary judgment or at trial. She should not be

required to set out her case as a precondition of advancing beyond the pleading stage without even having been afforded the opportunity to conduct discovery. Accordingly, the appellate court was correct in reinstating Anderson's claim for intentional interference with prospective business advantage.

I also agree with the appellate court's conclusion that Anderson's defamation claim should not have been dismissed. Unlike the appellate court, however, I do not believe that either of the defamatory remarks allegedly made by Vanden Dorpel can be excused, as a matter of law, under the innocent construction rule.

According to Anderson's complaint, as amended, Vanden Dorpel knowingly made false statements to Anderson's prospective new employer that she "did not follow up on assignments" and that "she could not get along with co-workers." Both of these statements impute an inability to perform her job and are manifestly prejudicial to her in her profession. As a result, they are defamatory *per se. Owen v. Carr*, 113 Ill. 2d 273, 277 (1986).

There is no dispute that Vanden Dorpel's statements cannot reasonably be interpreted as referring to anyone other than Anderson. There should be no dispute that they cannot reasonably be interpreted innocently. This is not a situation where, taken in context, a statement does not necessarily imply a plaintiff's lack of qualifications or skill in her calling. In context, that is precisely what the statements here imply. Based on the allegations of Anderson's complaint and the inferences that can reasonably be drawn from those allegations, Vanden Dorpel knew Anderson was applying for a comparable position at the YMCA, knew he was being asked for his assessment of her ability to perform that job, and knew that his remarks would be understood to mean that she would be a bad employee at the YMCA. Indeed, the complaint alleges that the very point of Vanden Dorpel's

420

false remarks was to thwart Anderson's attempt to obtain employment at the YMCA. To claim that Vanden Dorpel's remarks might be understood as relating simply to Anderson's abilities in the particular and limited circumstances of her job at Northwestern is therefore not only unreasonable, it is patently ridiculous.

Admittedly, precedent can be found to support the majority's position. Just because other courts have abused the innocent construction rule from time to time, however, does not mean that we should do so now. In *Mittelman v. Witous*, 135 Ill. 2d 220, 232 (1989), this court observed that the innocent construction rule had "spawned a morass of case law in which consistency and harmony have long ago disappeared." The court there attempted to rise above the confusion and provide some sensible guidance for future cases. We should do that here, too. Instead, we have slipped back into the quagmire.

JUSTICE FREEMAN joins in this dissent.