**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 210257-U

Order filed August 26, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, As Indenture Trustee for Citigroup Mortgage Loan Trust, Mortgage-backed Notes, Series 2005-6, | ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| JOHN SALGADO a/k/a/ JUAN E. SALGADO; BUTTERNUT CREEK WOODS HOMEOWNERS ASSOCIATION; UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, | ) ) ) ) ) | Appeal No. 3-21-0257 Circuit No. 17-CH-840 |
| Defendants-Appellees. | ) ) | |
| JOHN SALGADO, | ) ) | |
| Third-party Plaintiff-Appellant, | ) ) | Honorable Theodore J. Jarz, Judge, Presiding. |
| v. | ) ) | |
| WELLS FARGO HOME MORTGAGE, INC., a foreign corporation, | ) ) ) | |
| Third-party Defendant-Appellee. | ) | |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justice Albrecht and Justice Davenport concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Mortgage foreclosure defendant's third-party claims against the servicer of his mortgage loan for its alleged failure to apply certain funds to the unpaid principal balance of his loan were properly dismissed where the defendant had previously signed a modified loan agreement that precluded his claims and where his claims were not supported by sufficient factual allegations.

¶ 2     In this mortgage foreclosure action, defendant John Salgado filed a third-party complaint against Wells Fargo Home Mortgage, Inc. (Wells Fargo), the servicer of Salgado's loan and the former holder of the mortgage note. In his first amended third-party complaint (complaint), Salgado alleges that Wells Fargo failed to apply certain payments it had received from the Illinois Department of Transportation as the result of a condemnation proceeding to Salgado's loan principal, in violation of a prior court order. Salgado's complaint asserts various claims against Wells Fargo, including, *inter alia*, a violation of the Illinois Consumer Fraud Act, common-law fraud and conversion. The trial court dismissed Salgado's amended third-party complaint with prejudice. Salgado appeals that judgment.

¶ 3                                        FACTS

¶ 4     The following facts are drawn from the allegations Salgado made in his complaint and documents attached to that complaint.

¶ 5     On January 20, 2005, Salgado entered into a loan agreement and executed a note in favor of Wells Fargo, secured by a mortgage against his property at 347 S. Walnut Ridge Court in Frankfort, Illinois (the Property). From 2008 through 2010, Salgado experienced a significant drop in his income as a result of the mortgage crisis and the ensuing crash in the real estate market. He was unable to make his mortgage payments at that time.

¶ 6    On September 13, 2010, the Illinois Department of Transportation (IDOT) filed a condemnation complaint against a portion of the property that ran parallel to U.S. Route 30. The IDOT complaint named Wells Fargo in its capacity as the holder of the note and mortgage.

¶ 7    Wells Fargo subsequently assigned the note and the mortgage on the Property to U.S. Bank National Association, As Indenture Trustee for Citigroup Mortgage Loan Trust, Mortgage-backed Notes, Series 2005-6 ("U.S. Bank"). Thereafter, Wells Fargo acted as the servicer of the mortgage loan.

¶ 8    On October 26, 2010, U.S. Bank filed a mortgage foreclosure complaint against Salgado. The trial court allowed the action to go directly to mediation. Salgado was not permitted to conduct discovery during mediation.

¶ 9    On January 11, 2011, the trial court in the condemnation proceeding issued an Order vesting IDOT with title to a portion of the Property and awarding compensation to Salgado in the amount of $47,880.00. The court ordered the Will County Treasurer to distribute the funds to Wells Fargo "for the benefit of John Salgado." The court ruled that the IDOT proceeds were to be used to repair the Property and to be applied to the principal balance of Salgado's mortgage loan. Between June and August of 2011, the Will County Treasurer sent three installment payments to Wells Fargo totaling $47,880.00.

¶ 10    On October 11, 2011, Wells Fargo sent Salgado a letter stating that it had received funds in the amount of $44,640.00 and had applied those funds "as an additional principal payment." The letter further stated that Wells Fargo had received funds in the amount $3,240.00, which Wells Fargo applied to the "unapplied funds account" associated with Salgado's mortgage loan. Pursuant to the trial court's Order in the condemnation proceeding, the Will County Treasurer had sent Wells Fargo a final installment payment on August 8, 2011, in the amount of $3,240.00.

When that amount is added to $44,640.00, (the other amount that Wells Fargo acknowledged receiving on Salgado's behalf), the amounts equal $47,880.00, the total amount of the compensation awarded to Salgado in the condemnation proceeding.

¶ 11    Salgado relied upon Wells Fargo's statements in the October 11, 2011, letter that Wells Fargo had or would apply the IDOT funds to his outstanding loan principal balance. Salgado was not provided a ledger balance in October 2011 to show the application of the IDOT funds. Nor had he been receiving regular monthly mortgage statements during the foreclosure proceedings. Accordingly, he relied entirely upon the statements in Wells Fargo's October 2011 letter in concluding that the IDOT funds had either already been applied to his outstanding principal balance or would be applied to that balance when the Property was sold or when the parties entered into a modified loan agreement.

¶ 12    During the first mediation in the 2010 foreclosure proceeding, Wells Fargo initially concluded that Salgado did not qualify for a loan modification. However, the court-appointed mediator calculated Salgado's reported income and concluded that Salgado qualified for a loan modification under the federal Home Affordable Modification Program (HAMP). On or about August 25, 2011, Salgado sought and received a voluntary dismissal of the first foreclosure complaint.

¶ 13    On November 22, 2011, Wells Fargo offered Salgado a proposed loan modification pursuant to HAMP. Wells Fargo made the offer on a "take it or leave it" basis. It did not initially provide Salgado with the loan modification documents or explain how it calculated Salgado's modified principal balance. Salgado had no opportunity to propose any changes to the documents or to make a counteroffer. All terms and conditions of the loan were set solely by Wells Fargo. Wells Fargo mailed the loan modification documents to Salgado after mediation,

4

sometime after November 22, 2011. Salgado rejected the loan modification proposed by Wells Fargo because he found it to be unaffordable.

¶ 14     Because Salgado had rejected the proposed modification, U.S. Bank filed a second foreclosure complaint on December 11, 2012. The new complaint alleged that Salgado had an unpaid principal balance of $619,386.46 as of May 11, 2011. Like the first foreclosure proceeding, the second proceeding went directly to mediation and no discovery was permitted. Salgado had no ledger or accounting from Wells Fargo that disclosed the alleged principal balance or any fees added to the loan balance.

¶ 15     Salgado did not receive regular monthly mortgage statements during the first and second foreclosure proceedings or during the period between those proceedings. The mortgage statements Salgado received during that period contained misstated figures and escrows that never appeared on a mortgage statement before the foreclosure proceedings began. The mortgage statements produced by Wells Fargo during 2010 through 2013 contained extremely large negative escrow balances and overstated payments in arrears and advances that were never explained. Moreover, the December 20, 2013, mortgage statements indicated that Salgado owed $151,356.64 in late payments, which was almost double the amount that Salgado owed. Salgado has not found the mortgage statements in his possession at the time of the second foreclosure. The mortgage statements in his possession do not cover the entire relevant period.

¶ 16     On January 14, 2014, Wells Fargo, on behalf of U.S. Bank, entered into a loan modification agreement with Salgado (the modification agreement). The modification agreement indicated that Salgado owed $616,411.68 in unpaid principal plus $108,537.36 in unpaid interest, taxes, fees, and advances, which amounted to a total modified principal balance of $724,949.04. The modification agreement specified that the $727,949.04 number "included

5

all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges) *** less any amounts paid to the lender but not credited to my loan."

¶ 17        Salgado had no opportunity to negotiate the terms of the proposed modification agreement. The agreement's terms were set by Wells Fargo alone, and they were not subject to change. The loan balance, the interest rate, and the new payment amounts were determined solely by Wells Fargo. At the time Wells Fargo offered the proposed modification, Salgado did not have any accounting from Wells Fargo or any ledger of fees and expenses accrued or added to the loan. In accepting the terms of the modification agreement, Salgado relied entirely upon the mortgage statements that Wells Fargo had previously sent him, specifically the December 20, 2013, mortgage statement which indicated that Salgado had a negative escrow balance of $56,697.15 and a total balance of $767,768.32.

¶ 18        Neither the loan modification documents, the December 20, 2013, mortgage statement, or any of the prior mortgage statements in Salgado's possession referenced the IDOT payments. Based upon the statements in Wells Fargo's October 11, 2011, letter and the trial court's Order in the condemnation proceeding, Salgado trusted that the IDOT payments were (or would be) applied to his unpaid principal balance. In addition, Salgado thought that the proposed modification agreement appeared to show that the IDOT funds had been applied to the modified principal balance because the total balance stated in the December 20, 2013, mortgage statement ($767,768.32) minus the amount of the IDOT proceeds ($47,8809), was close in amount to the $727,949.32 modified principal balance.

¶ 19        On April 25, 2017, U.S. Bank filed a third foreclosure complaint against Salgado. In preparing to defend against the foreclosure complaint, Salgado came to believe that the balance

provided by Wells Fargo and U.S. Bank in the January 2014 modification agreement did not include the IDOT proceeds. During the 2017 foreclosure proceedings, U.S. Bank produced a ledger which, according to Salgado: (1) failed to show any entry of the IDOT proceeds or their application to the loan principal in 2011 or thereafter; (2) showed that Wells Fargo had "repaid itself" $56,697.15 out of a negative escrow account just after Salgado had executed the modified loan agreement.

¶ 20     A judgment of default was initially entered against Salgado, but Salgado successfully moved to vacate the judgment. On February 21, 2018, Salgado filed a motion to dismiss the third foreclosure complaint, which the trial court denied.

¶ 21     Salgado subsequently filed his answer to the foreclosure complaint, which asserted the affirmative defense of unclean hands and reserved the right to assert other defenses if they became known during the course of litigation. Salgado also filed a counterclaim against U.S. Bank asserting claims for breach of contract, breach of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (815 ILCS 505/1(c) and 1(e)), wrongful foreclosure, conversion, and set-off. Each of these claims was premised, in part, on Salgado's allegations that U.S. Bank had wrongfully converted the IDOT funds, failed to apply those funds to Salgado's principal balance (as required by the trial court's Order in the condemnation proceedings), and misrepresented the amount of the principal balance prior to the 2014 modification. Salgado sought damages plus set-off in the amount of the IDOT funds.

¶ 22     On January 17, 2020, Salgado filed a third-party complaint against Wells Fargo. Salgado alleged that Wells Fargo was either the holder or the assignee of the note and mortgage, and the recipient of the IDOT funds on behalf of Salgado. Salgado asserted the same claims for violations of the IFCA, breach of contract and conversion against Wells Fargo that he had

7

asserted against U.S. Bank in his counterclaims. The claims were predicated on the same allegations. Salgado also asserted claims for fraud and breach of fiduciary duty against Wells Fargo. Each of the third-party claims that Salgado raised against Wells Fargo were premised, in large part, on Salgado's allegations that Wells Fargo had wrongfully converted the IDOT funds, failed to apply those funds to Salgado's principal balance (as required by the trial court's Order in the condemnation proceedings), and misrepresented the amount of the principal balance prior to the 2014 modification.

¶ 23    On February 21, 2020, U.S. Bank filed a motion to strike Salgado's affirmative defenses and counterclaims pursuant to section 5/2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). U.S. Bank argued, *inter alia*, that Salgado's affirmative defense and all his counterclaims should be dismissed because, by signing the 2014 modification agreement, Salgado acknowledged and assented to the validity of the indebtedness under the loan as stated in the modification agreement. In the alternative, U.S. Bank argued that Salgado's affirmative defense of unclean hands and each of his asserted counterclaims were improperly pled and legally deficient, and that his ICFA claims were also time-barred.

¶ 24    On June 26, 2020, the trial court issued an Order granting U.S. Bank's motion to strike Salgado's answer and affirmative defenses. The court ruled that:

> "[Salgado] is henceforth barred from asserting any argument or claim against Plaintiff regarding Salgado's allegation that funds from condemnation proceedings with respect to the property *** were not properly applied to the loan that is the subject of Plaintiff's amended complaint due to the Court's determination that the Loan Modification executed by John Salgado on February 4, 2014, that is attached to Plaintiff's Amended Complaint

8

as Exhibit D is controlling on this issue, including as to all of the portions of [Salgado's] Affirmative Defense and Counterclaim that raised this issue."

¶ 25    The trial court further found that: (1) Salgado's affirmative defense of unclean hands was not a bar to U.S. Bank's foreclosure claims; (2) Salgado's ICFA claim was barred by the applicable statute of limitations; (3) Salgado's counterclaims for breach of contract and conversion failed to state valid causes of action. The court granted Salgado leave to file an amended responsive pleading consistent with the court's rulings as stated in the Order.

¶ 26    On April 22, 2020, Wells Fargo filed a combined motion to dismiss Salgado's third party complaint pursuant the sections 2-615 and 2-619 of the Code (735 ILCS 5/2-619 (West 2020)). Wells Fargo argued that Salgado's third-party complaint should be dismissed in its entirety because, as the trial court ruled in its June 26, 2020, Order, Salgado assented to the loan balance as stated in the modification agreement and is therefore barred from arguing that the IDOT proceeds were not applied or that the modified balance was incorrect. In the alternative, Wells Fargo argued that Salgado's claims for breach of fiduciary duty, fraud, conversion, and violation of the ICFA were time-barred under the applicable statutes of limitations and were legally deficient.

¶ 27    On August 21, 2020, the trial court issued an Order dismissing Salgado's breach of contract claim without prejudice and granting Salgado leave to file an amended third-party complaint for breach of contract. The court dismissed Salgado's remaining claims with prejudice, finding them to be time-barred by the applicable statutes of limitations. The court stated that, in making its rulings, it had relied in part upon the upon the findings of fact it had made in its June 26, 2020, Order.

9

¶ 28    On October 9, 2020, Salgado filed his first amended third-party complaint against Wells Fargo. In his complaint, Salgado pleaded an amended claim for breach of contract and new claims for breach of the implied covenant of good faith and fair dealing, breach of written promise to pay, and equitable lien. Salgado also repleaded the claims from his initial third-party complaint that the trial court had dismissed with prejudice, but noted that he was doing so only to preserve those claims for appeal.

¶ 29    Wells Fargo filed a combined motion to dismiss the complaint pursuant to sections 2-615 and 2-619 of the Code. As it had done in its motion to dismiss Salgado's initial third-party complaint, Wells Fargo argued that all of Salgado's claims should be dismissed under section 2-615 because they depend upon the assertion that the 2014 modified balance was misstated or inaccurate, which contradicts Salgado's prior assent to the amount of the modified balance. Wells Fargo further argued that Salgado's claims should be dismissed under section 2-615 for the additional reason that they fail to state claims as a matter of law. Wells Fargo further argued that the trial court had correctly dismissed several of Salgado's prior claims as untimely.

¶ 30    On May 14, 2021, the trial court issued an Order dismissing each of Salgado's claims with prejudice. In so ruling, the court stated that "The Loan Modification executed by John Salgado on February 4, 2014, is controlling as to the amount owed on the loan." The court further stated that, in making its rulings, it had relied in part upon the upon the findings of fact it had made in its June 26, 2020, Order. The court found that the rights and claims of the third-party plaintiff and defendant had been adjudicated and fully determined, that its Order was final and appealable as to those rights and claims, and that there was no just reason for delaying the enforcement or appeal of the trial court's judgment.

¶ 31    This appeal followed.

10

¶ 32                                                ANALYSIS

¶ 33        Salgado argues that the trial court erred by striking his affirmative defense and

counterclaims and by granting Wells Fargo's motion to dismiss his complaint pursuant to

sections 2-615 and 2-619 of the Code.

¶ 34        A motion to dismiss under section 2–615 challenges only the legal sufficiency of the

complaint and admits the truth of all well-pleaded factual allegations. *Anderson v. Vanden

Dorpel*, 172 Ill. 2d 399, 407 (1996).  The question presented by a motion to dismiss under

section 2–615 is whether sufficient facts are contained in the pleadings which, if proved, would

entitle the plaintiff to relief.  *Id.*  Illinois is a fact pleading jurisdiction. Accordingly, to survive a

motion to dismiss under section 2-615, the plaintiff must allege facts sufficient to bring the claim

within the scope of the cause of action asserted. *Id.* at 408.  Conclusions of law and

conclusory factual allegations unsupported by specific factual statements will not suffice.

*Premier Networks, Inc. v. Stadheim and Grear, Ltd*., 395 Ill. App. 3d 629, 633 (2009).

¶ 35        A motion to dismiss under section 2-619 admits to the legal sufficiency of the complaint

and raises an affirmative defense or some other affirmative matter that defeats the plaintiff's

claims. *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 III. App. 3d 605, 613 (2007).

The fact that a complaint is filed after the running of the applicable statute of limitations is a

valid reason for dismissal pursuant to section 2–619(a)(5).  *Federated Industries, Inc. v. Reisin*,

402 Ill. App. 3d 23, 27 (2010).

¶ 36        We review a trial court's decision to grant a motion to dismiss under section 2-615 or

section 2-619 *de novo*.  *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006).

¶ 37    Salgado argues that the trial court erred by dismissing his affirmative defense and counterclaims in its June 26, 2020, Order and by subsequently relying on that Order in dismissing his complaint. He raises several arguments in support of these contentions, none of which has merit.

¶ 38    As an initial matter, Salgado maintains that the 2014 modification agreement is not binding on him because it is a "contract of adhesion" that is both substantively and procedurally unconscionable. However, Salgado did not raise this claim in his complaint. In ruling on Wells Fargo's motion to dismiss under section 2-615, both the trial court and our court may consider only the facts apparent from the face of the complaint and any attached exhibits. *Hadley v. Doe*, 2015 IL 118000, ¶ 29; see also *Dunn v. Baltimore R.R. Co.,* 127 Ill. 2d 350, 372 (1989) ("It is axiomatic that only well-pleaded facts alleged in the complaint, and any attached exhibits, may be considered on a motion to dismiss."). Salgado's complaint contains no reference to a "contract of adhesion" or to "unconscionability." Nor does it contain any factual allegations sufficient to support these claims. Although the complaint baldly alleges that the modification agreement was not an "arms-length" transaction because Salgado had no negotiating power and limited access to relevant information, other allegations of the complaint contradict these assertions. For example, Salgado alleges that, although he was not receiving "regular" monthly mortgage statements during the foreclosure proceedings, he did receive some mortgage statements during that period, including but not limited to the December 2013 statement. He further alleges that he received the proposed loan modification documents prior to executing the modification agreement and that he compared the modified principal balance with the unpaid principal balance stated in the December 2013 mortgage statement. When he did so, he concluded that the modified principal balance appeared to be accurate and appeared to include

12

the IDOT funds. Salgado asserts that the prior mortgage statements were inaccurate and that he did not have an accounting from Wells Fargo at the time, but he does not allege that he had no opportunity to request further information from Wells Fargo before executing the modification agreement. Accordingly, Salgado has not alleged facts in his complaint that, if true, could support a claim of unconscionability.

¶ 39    Salgado further argues that the trial court's June 26, 2020, Order was erroneous and does not support the dismissal of his complaint. Specifically, Salgado maintains that the trial court erred by ruling that Salgado's assent to the modified principal balance precludes him from disputing its accuracy.

¶ 40    We disagree. The modification agreement, which Salgado attached as an exhibit to his complaint, explicitly states that by signing the document Salgado agreed that the modified principal balance of $724,949.04 included "*all amounts past due*" as of the date of the modification (including escrow payments, interest, fees, and other advances) "less any amounts paid to the lender but not credited to my loan." Accordingly, when he executed the modification agreement, Salgado agreed that the modified principal balance was an accurate statement of his indebtedness and that any funds paid to the lender on Salgado's behalf (such as the IDOT funds) had already been applied to the modified principal balance.

¶ 41    The exhibits to a pleading control over the allegations asserted in the pleading. *In re Estate of Davis*, 225 Ill. App. 3d 998, 1000 (1992). When the allegations contradict the exhibits, as here, the allegations must be disregarded in favor of the exhibits. *Id.* Thus, as the trial court correctly held, the plain and unambiguous terms of the modified agreement prevail over any contradictory allegations contained in Salgado's complaint.

13

¶ 42      Moreover, some of the complaint's allegations support the trial court's conclusion that Salgado should be precluded from challenging the modified principal balance. The complaint indicates that Salgado had been receiving regular mortgage statements prior to the first foreclosure and the condemnation proceedings, and that he had been receiving some mortgage statements during the foreclosure proceedings. Accordingly, Salgado had a chance to compare the loan balance prior to the condemnation proceedings (and the loan balance in December 2013) with the loan balance as stated in the modification agreement to determine whether the modified loan balance was correct. When he compared the December 2013 balance with the modified balance, he concluded that the modified balance "appeared[ed] to be accurate" and that it appeared that the condemnation funds had been applied. He reached this conclusion because the total balance stated in the December 20, 2013, mortgage statement ($767,768.32) minus the amount of the IDOT proceeds ($47,8809), was close in amount to the $727,949.32 modified principal balance. In fact, there was a discrepancy of more than $5,000. Had Salgado done the math more carefully, he would have noticed the discrepancy and would have had good reason to inquire further as to whether the IDOT funds had been applied to the modified principal balance.

¶ 43      In addition, Salgado alleges that the mortgage statements he received during the foreclosure proceedings contained misstated figures and advanced escrowed funds that never appeared on a mortgage statement before the foreclosure proceedings began. The payments in arrears were overstated, and the extremely large negative escrow balances were never explained. Moreover, the December 2013 mortgage statement indicated that Salgado owed $151,356.64 in late payments, which Salgado alleges was almost double the amount that he actually owed for late payments. All of these discrepancies and misstatements put Salgado on notice to inquire further as to the accuracy of the modified principal balance. However, he never did so.

14

¶ 44 Accordingly, Salgado cannot now complain that the loan balance stated in the modification agreement was incorrect. See *RBS Citizens, N.A. v. TRG-Oak Lawn*, LLC, 407 Ill. App. 3d 183, 192 (2011) ("a person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another"); *Nilsson v. NBD Bank of Ill.*, 313 Ill. App. 3d 751, 762 (1999) (ruling that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth and has not availed himself of the opportunity "cannot be heard to say that he was deceived by misrepresentations").

¶ 45 For all these reasons, the trial court did not err in its June 26, 2020, Order when it held that the modification agreement was controlling as to the agreed amount of the outstanding principal balance on the loan.

¶ 46 Salgado further argues that he has pleaded new facts in the complaint that precluded the trial court from relying on its June 26, 2020, Order in dismissing the complaint. Specifically, he states that Wells Fargo held $56,697.15 in a hidden "suspense account" prior to the loan modification. Then, just after the modification, Wells Fargo added those funds to Salgado's escrow account and then immediately "withdrew" those funds, converting them for its own use. He argues that the June 26, 2020, Order did not account for these alleged "new facts."

¶ 47 However, Salgado misunderstands the documents he attached to his complaint, which show that he had a negative balance of $56,697.15 in the December 2013 statement, meaning that Wells Fargo had advanced that amount out of its own funds to pay for escrow items and Salgado owed that money to Wells Fargo. Thus, when Wells Fargo later applied that amount to the new principal balance, it was complying with the loan modification, which stated that the new principal balance would include escrow advances.

15

¶ 48    Moreover, the trial court addressed these alleged "new facts" in the May 14, 2021, hearing on Wells Fargo's motion to dismiss. In response to Salgado's argument that Wells Fargo had "withdrawn" the amount in the escrow account shortly after the modification agreement was executed, the Court stated that "at the time the loan modification was agreed to, those transfers may not have been affected, although they were contemplated in reaching the determination as to what the loan balance would be." In other words, the trial court correctly concluded that the negative escrow balance of $56,697.15 was being applied to the new principal balance per the terms of the modification agreement. The fact that this application of proceeds occurred after Salgado signed the loan modification is in line with Wells Fargo implementing the terms of the modification agreement upon Salgado's signing of the agreement. Salgado's claim that Wells Fargo "stole" money from his escrow account is baseless because this was not money that Salgado had paid to Wells Fargo but rather money that Wells Fargo had advanced to pay escrow items, as evidenced by the fact that the escrow balance was negative.

¶ 49    Salgado argues that the ledger Wells Fargo produced in the third foreclosure proceeding confirms his theory that Wells Fargo "stole" money from Salgado's escrow account because it shows that Salgado's previously negative escrow balance "turned positive" immediately after the modification agreement was executed. In fact, the ledger refutes Salgado's theory. It shows that Wells Fargo applied the negative escrow balance amounts to the modified principal balance as the parties had agreed.

¶ 50    Accordingly, Salgado did not plead any new facts in his complaint which would preclude the trial court from relying on its June 26, 2020, Order in dismissing his complaint.

¶ 51    In his reply brief, Salgado argues for the first time that his entering into the modification agreement does not bar his claims against Wells Fargo because the agreement is only binding

16

upon the lender (U.S. Bank), not Wells Fargo (which signed the agreement on U.S. Bank's behalf as U.S. Bank's agent). Salgado further argues that Wells Fargo is not in privity with U.S. Bank. Arguments raised for the first time on appeal are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020); *Village of Downers Grove v. Village Square III Condominium Ass'n*, 2022 IL App (2d) 210098, ¶ 93. Therefore, we will not consider these arguments.

¶ 52      All of Salgado's remaining claims are predicated on his argument that Wells Fargo did not apply the IDOT funds to the modified principal balance and that the modified balance was therefore inaccurate. As noted above, the trial court correctly ruled that Salgado is precluded from making these arguments. Thus, all of Salgado's claims fail as matter of law and were properly dismissed pursuant to section 2-615. Because we affirm the trial court's judgment on this basis, we do not need to address Wells Fargo's alternative arguments for dismissal, including its arguments that several of Salgado's claims are untimely and subject to dismissal under section 2-619.

¶ 53                                         CONCLUSION

¶ 54      For the foregoing reasons, we affirm the judgment of the circuit court of Will County dismissing Salgado's first amended complaint.

¶ 55      Affirmed.