In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 13-3350

AARON MCCOY,

*Plaintiff,*

*v.*

IBERDROLA RENEWABLES, INC., and STREATOR-CAYUGA RIDGE
WIND POWER, LLC,

*Defendants, Third-Party Plaintiffs,*

and

GAMESA TECHNOLOGY CORPORATION, INC., and GAMESA
WIND US, LLC,

*Defendants, Third-Party Plaintiffs, Counter Defendants-*
*Appellees,*

*v.*

OUTLAND RENEWABLE ENERGY, LLC, n/k/a RENOVO
RENEWABLE ENERGY, LLC, and OUTLAND ENERGY SERVICES,
LLC, n/k/a NORTHWIND HOLDINGS, LLC, f/k/a OUTLAND
RENEWABLE ENERGY FIELD SERVICES, LLC,

*Third-Party Defendants, Counter Plaintiffs-Appellants.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-CV-00592 — **Charles P. Kocoras**, *Judge*.

———————————

ARGUED MAY 21, 2014 — DECIDED JULY 28, 2014

———————————

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This lawsuit began as a personal injury case. It expanded to encompass disputes over the entire business relationship between the appellants (collectively "Outland") and appellees (collectively "Gamesa"). Only Outland's numerous third-party counterclaims against Gamesa are at issue in this appeal. Gamesa prevailed on a motion to dismiss, and the district court denied Outland's motion for leave to amend.

Outland's third-party counterclaims are not part of the original case or controversy, so Outland needed an independent basis for federal subject matter jurisdiction to assert them as part of this lawsuit. In an effort to salvage part of its case, therefore, Outland now makes the desperate argument that its own federal antitrust counterclaims were so feeble that they could not support federal question jurisdiction under 28 U.S.C. § 1331 and that its original third-party counterclaims based on state law fell outside the scope of supplemental jurisdiction under 28 U.S.C. § 1367 that Outland itself invoked. In the alternative, Outland argues that the district court erred in applying Illinois substantive law and should have granted leave to amend. We affirm across the board.

I.   *Factual and Procedural Background*

The procedural history on the defense side of this case is complex. We provide a simplified summary, and we accept as true all factual allegations from Outland's counterclaims and proposed amended counterclaims. See *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012); *Gillman v. Burlington Northern R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989).

A.   *The Parties and the McCoy Accident*

Appellees Gamesa Wind US and Gamesa Technology Corp. (collectively "Gamesa") are wholly-owned domestic subsidiaries of a non-party Spanish manufacturer of wind turbines. They contracted with Minnesota-based appellants Outland Renewable Energy and Outland Energy Services (collectively "Outland," though their names have since changed) to provide maintenance services for Gamesa wind turbines. Utility company Iberdrola Renewables ("Iberdrola") operated Gamesa-made wind turbines at the Cayuga Ridge Wind Farm in Illinois.

While servicing a wind turbine at Cayuga Ridge, Outland employee Aaron McCoy was electrocuted when the turbine unexpectedly re-energized. McCoy began this case by filing a personal injury case in state court against Iberdrola and Gamesa Technology Corp. The case was removed to federal court on the basis of diversity of citizenship. Iberdrola then impleaded Gamesa Wind US and Outland to seek indemnification for the McCoy accident based on contract and the Illinois Joint Tortfeasor Contribution Act ("JTCA"). The various defendants then filed numerous cross-claims and counterclaims related to the personal injury dispute.

B.  *Outland's Original Counterclaims and the Settlement*

This appeal concerns only Outland's third-party counter-claims against Gamesa. Gamesa asserted third-party claims against Outland for contribution for the McCoy accident based on contractual indemnification and the Illinois JTCA. Outland responded with 22 counterclaims, raising a host of new issues and greatly widening the scope of the case. These included indemnification for the McCoy accident; federal antitrust claims under the Sherman and Clayton Acts; state antitrust claims under Illinois, Minnesota, and Texas law; and numerous other state law claims. Outland makes only jurisdictional arguments regarding these claims on appeal.

In response to Outland's third-party counterclaims, Gamesa attempted to enforce a contractual provision provid-ing for venue exclusively in Pennsylvania, but the district court found the provision invalid under Illinois law. Outland then moved for a preliminary injunction against Gamesa's allegedly unfair competitive practices. After a five-day hear-ing, Outland's request for a preliminary injunction was de-nied based on Illinois substantive law.

Gamesa then moved for judgment on the pleadings un-der Rule 12(c). The district court dismissed all but one of Outland's counterclaims for failure to state claims for relief. Only the claim for indemnification related to the McCoy ac-cident survived. McCoy, Gamesa, and Outland then settled. The district court accepted the settlement with a finding of good faith, protecting Outland and Gamesa from further claims for contribution under the Illinois JTCA, see 740 Ill. Comp. Stat. 100/2, and all claims arising from the accident among those parties were dismissed. At that point, only the original personal injury dispute between McCoy and

Iberdrola remained, but the court had not issued a final judgment.

C. *Outland's Proposed Amended Counterclaims*

About six months after the district court dismissed Outland's third-party counterclaims, Outland moved for leave to amend its counterclaims against Gamesa. Outland presented seven proposed amended counterclaims and argued for the first time that the substantive law of Minnesota, not Illinois, should apply. The district court determined that Outland had waived the choice of law issue. It then denied leave to amend based on futility and undue delay. Outland focuses its appeal on the merits of the proposed amended counterclaims, so we follow suit.

The proposed amended counterclaims arose from the following alleged events from early 2011. Gamesa attempted to acquire Outland but was rebuffed. Duke Energy, a utility company and Gamesa customer, then entered an agreement to purchase a twenty-five percent stake in Outland. Duke and Outland also began negotiating a possible fleet services agreement, which would have been very lucrative for Outland by making it the main provider of maintenance services for Duke-operated wind turbines. They also discussed a possible agreement for Duke to purchase all of Outland, which would be funded in part by an institutional investor.

During these negotiations, the federal Occupational Safety and Health Administration ("OSHA") issued six citations to Outland based on the McCoy accident. Shortly thereafter, Duke informed Gamesa of its ongoing negotiations with Outland. Gamesa made its own offer to provide maintenance services for Duke-operated wind turbines, but Duke

declined. Gamesa then sent a letter to Outland saying that the OSHA citations resulting from the McCoy accident showed a breach of their maintenance contract. Gamesa stopped issuing new purchase orders to Outland as a result of the alleged breach, which significantly reduced the value of Outland. (For reference, Outland's revenue from Gamesa purchase orders was over $6 million in 2010.) Duke and Outland eventually closed the complete acquisition agreement, but only after Duke lowered its offer by $15 million after Gamesa stopped issuing purchase orders to Outland. Duke did not enter a contractual fleet services agreement despite having previously "agreed" to do so.

Outland alleged that it did not breach its contract with Gamesa and that Gamesa's letter claiming breach based on the OSHA citations was sent in bad faith. Outland presented three theories of liability based on the resulting change in the value of the complete acquisition agreement—tortious interference with contract; tortious interference with prospective economic advantage; and if the other two theories failed, the generic "prima facie tort," a problematic concept not adopted by Illinois state courts. The district court determined that these claims would not survive a motion to dismiss and denied leave to amend based on futility.

Outland further alleged that Gamesa had been planning to replace Outland with in-house maintenance services but had encouraged Outland to expand and train new personnel. The cessation of new purchase orders after the OSHA citations was done in bad faith to complete this scheme. Outland alleged claims for promissory estoppel based on its detrimental reliance and for breach of fiduciary duty on the theory that Gamesa and Outland had a principal-agent rela-

tionship. The district court denied leave to amend to add these claims because the nearly six months that had passed since the Rule 12(c) dismissal constituted an undue delay that unfairly prejudiced Gamesa.

The sixth proposed counterclaim sought indemnification for the OSHA penalties imposed on Outland for the McCoy accident. The district court denied leave to amend based on the settlement order and undue delay. The final proposed counterclaim again alleged federal antitrust violations of the Sherman and Clayton Acts based on Gamesa's supposed monopoly over its own services and its unusually high market power despite having roughly ten percent of wind turbine sales market. The district court also denied leave to amend these claims based on futility.

The district court entered a separate judgment under Federal Rule of Civil Procedure 54(b) on Outland's counterclaims against Gamesa. Outland then moved to alter or amend the judgment under Rule 59(e), arguing for the first time that the district court lacked subject matter jurisdiction over the original counterclaims. Outland argued that its own federal antitrust claims were too weak even to invoke federal question jurisdiction under 28 U.S.C. § 1331 and alternatively that its own state claims did not fall within the scope of supplemental jurisdiction under 28 U.S.C. § 1367(a). At no point did Outland request the district court to exercise its discretion under § 1367(c), which allows a court to decline supplemental jurisdiction under certain circumstances even when a claim falls within the scope of § 1367(a). The district court denied the motion, and Outland has appealed.

II.  *Analysis*

A.  *Subject Matter Jurisdiction*

The extraordinary feature of this case is Outland's argument that its own federal antitrust counterclaims were so "fatally flawed" that they did not even invoke federal question jurisdiction under 28 U.S.C. § 1331, and thus could not have been the basis for the exercise of supplemental jurisdiction over its state law claims under 28 U.S.C. § 1367. Cf. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 168 (1997) ("Understandably, ICS does not rest [its argument that the district court lacked jurisdiction] on the notion that its federal claims are so insubstantial as not to establish federal jurisdiction.").

Whether there is an independent basis for federal jurisdiction over Outland's counterclaims would not matter if they arose from the allegations supporting McCoy's original personal injury claims, which provided the court with diversity jurisdiction under § 1332. But Outland's antitrust and commercial tort third-party counterclaims arose from a different set of facts and were not part of the same case or controversy, as required for supplemental jurisdiction under § 1367(a). The federal antitrust claims are the only jurisdictional anchors for those third-party counterclaims. In the alternative, Outland argues that its state law claims did not "form part of the same case or controversy under Article III" as the federal antitrust claims, as required by § 1367(a), and that the district court should have exercised its discretion to decline jurisdiction under § 1367(c). We address these arguments in turn.

### 1. *Federal Question Jurisdiction*

Outland argues that its own federal antitrust claims were so feeble (carefully avoiding the term "frivolous") that they could not even invoke federal question jurisdiction. That argument leaves Gamesa to offer a delicate defense of its opponent's claims, at least to a point. Gamesa argues that Outland merely failed to state claims for relief but that the claims were not so utterly frivolous as to fail to invoke federal jurisdiction. We agree.

When it comes to invoking federal question jurisdiction, the bar is low. The district court generally has jurisdiction over a claim "arising under" federal law. 28 U.S.C. § 1331; *International College of Surgeons*, 522 U.S. at 163. Even if the federal claim fails to state a cause of action, the district court retains jurisdiction to say so. See *Bell v. Hood*, 327 U.S. 678, 682 (1946). "[T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,' unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998), quoting *Bell v. Hood*, 327 U.S. at 685, 682–83.

Outland's strategy on appeal could expose it to sanctions under Federal Rule of Civil Procedure 11 or otherwise. We have noted that "[i]n deciding whether a claim is so insubstantial as not to invoke federal jurisdiction, the cases sometimes use language more emphatic than one encounters in modern Rule 11 cases." *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278 (7th Cir. 1988). A district court lacks juris-

diction only if a suit is "utterly frivolous" on the face of the pleadings, but "Rule 11 is not so cabined" both in the sense that it can reach (arguably) less egregious conduct and can be based on defects not evident from the pleadings alone. *Id*.

Outland's first federal antitrust claim alleged that Gamesa conspired with its Spanish parent company and Iberdrola. It has been clear for thirty years that a subsidiary cannot "conspire" with its parent in violation of the Sherman Act. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771–74 (1984). For reasons that are not clear from the record, Outland did not try to save this claim from dismissal by pointing to the alleged involvement of Iberdrola. Instead, Outland relied only on a district court decision issued before *Copperweld* settled the parent-subsidiary question. This strategy was a certain loser, but the poor argument in its defense did not deprive the court of jurisdiction. (At this point in the litigation, waiver would block any attempt Outland might make to revive this claim based on alleged involvement of Iberdrola.)

The second claim alleged that Gamesa unlawfully tied maintenance services to the sales of its wind turbines and had disproportionate market power in the late 2000s in a market for maintenance services for Gamesa turbines. The district court dismissed the claim because of the insufficiency of Gamesa's alleged market power. Gamesa supposedly had a ten percent share of the wind turbine market, which is just not enough by itself, if that's the relevant market and there were no extraordinary circumstances. However, Outland opposed dismissal by arguing that Gamesa did have market power at the relevant time because of serious shortages in the wind turbine market, giving it the power to tie

the sale of maintenance services to the sale of the turbines themselves. That may be a tough theory to prove. How long might the shortage have lasted? See *Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590, 594 (7th Cir. 2008) (market power is ability to charge a price *persistently* above competitive level despite existence of competitors). We need not wrestle these nuances to the ground, however, because Outland does not attack the dismissal or try to defend its theory. It argues instead that its theory was so vacuous as to fail to invoke federal question jurisdiction. Suffice it to say there was at least some room for argument about market power, so the alleged claim was not "utterly frivolous," nor was the theory of a combination between Gamesa and Iberdrola. Outland also has not admitted to pleading the federal antitrust claims as a mere pretext for bringing its other claims into federal court using supplemental jurisdiction. Cf. *Steel Co.*, 523 U.S. at 89.

Accordingly, although Outland has essentially confessed to sanctionable conduct (an issue Gamesa may take up with the district court if it wishes to), the claims under the Sherman and Clayton Acts were sufficient to invoke the district court's subject matter jurisdiction.

### 2. *Supplemental Jurisdiction*

Not until after judgment was entered did Outland question supplemental jurisdiction—which Outland itself had asked the court to exercise by filing its original counterclaims and its motion for leave to amend. Even then, its motion under Rule 59(e) argued only that the "other state claims" (the original counterclaims that were not federal or state antitrust claims) were not part of the "same case or controversy" as required by 28 U.S.C. § 1367(a). The motion did not address the discretionary factors in § 1367(c). A post-

judgment motion would have been too late to raise the issue anyway, but Outland clearly forfeited its argument that the district court should have exercised its discretion under § 1367(c) to decline jurisdiction by failing ever to make it to the district court.

The discretionary power to decline jurisdiction under § 1367(c) does not present a limit on subject matter jurisdiction that a district court must raise and decide on its own: "This division between the requisites of jurisdictional competence in § 1367(a) and the criteria for the exercise of discretion in § 1367(c) also marks, we believe, the division between matters the court must examine on its own and those that depend on an assertion of error by the litigants." *Myers v. County of Lake*, 30 F.3d 847, 850 (7th Cir. 1994); see also *International College of Surgeons*, 522 U.S. at 172 (reaffirming the proposition that pendent or supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right"); *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 627 (1974) (discretionary doctrine of pendent jurisdiction, the forerunner of § 1367(c), was not "something akin to subject matter jurisdiction that may be raised *sua sponte* at any stage"). We therefore address only whether the other state law claims formed part of the "same case or controversy" as the anchoring federal antitrust claims.

Section 1367(a) "authorizes the district courts to exercise jurisdiction to the full extent of Article III's 'case or controversy' requirement." *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995). Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). To satisfy this requirement, "'[a]

loose factual connection between the claims is generally suf-ficient.'" *Baer*, 72 F.3d at 1299, quoting *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). In *Ammerman*, the plaintiff brought a Title VII claim against her employer for sexual harassment by a co-worker and a state tort claim against her co-worker for assault and battery. The district court had supplemental jurisdiction over the state claim because the assault facts relevant to the tort claim formed a subset of the facts supporting the Title VII claim. *Ammerman*, 54 F.3d at 424.

Outland concedes that its state antitrust claims over-lapped with its federal antitrust claims, but in fact *all* of its original counterclaims arose from a common nucleus of op-erative facts. *Ammerman* is instructive because Outland put its entire relationship with Gamesa at issue through the fed-eral antitrust claims, and each of the state claims arose from a subset of the antitrust allegations. We discuss the other state law claims in three groups: tortious interference claims, contract claims, and defamation claims.

The tortious interference claims dealt with Gamesa's conduct with respect to Outland's other business relation-ships. Outland alleged that Gamesa interfered with prospec-tive agreements with third parties for maintenance services, including its acquisition by Duke Energy. Outland also al-leged that Gamesa interfered with its technicians and safety policies, which ultimately led to the McCoy accident and OSHA sanctions. These tactics threatened Outland's exist-ence, thus contributing to the federal antitrust claims and forming part of the same nucleus of operative facts.

The contract claims dealt with Gamesa's conduct with re-spect to its own business with Outland. The allegations in-

cluded straightforward breach of the maintenance service
contract and dealing in bad faith by encouraging Outland to
hire new workers while planning to cut back on Outland's
services. The alleged bad-faith commercial conduct clearly
relates to the federal antitrust claims. Outland also tied the
terms of the maintenance services contract, which allegedly
restrained competition, into its federal antitrust claims. Dif-
ferent causes of action between the same parties that arise
from the same contract and same events will ordinarily be
part of the same case or controversy. See, e.g., *Channell v. Cit-
icorp Nat'l Servs., Inc.*, 89 F.3d 379, 385–86 (7th Cir. 1996)
(holding that actions based on signing and termination of
the same lease formed part of the same case or controversy
under § 1367(a)). Outland shows no reason for requiring liti-
gation of the contract claims in a separate case.

The defamation claims alleged that Gamesa made un-
specified false statements about Outland's service and about
its breach of the maintenance services contract, the same
course of events supporting the federal antitrust claims. Out-
land never alleged any particular defamatory statement,
which was a problem in itself. In any event, because an anti-
trust claim for conspiracy to monopolize requires a showing
of a specific intent to monopolize, see 15 U.S.C. § 2; *Great Es-
cape, Inc. v. Union City Body Co.*, 791 F.2d 532, 540–41 (7th Cir.
1986), and because the unspecified allegations of defamation
to harm Outland as a potential competitor could have con-
tributed to an inference of intent, the defamation claims
were part of the same case or controversy.

The federal antitrust claims had a large "nucleus of oper-
ative facts," and the other original state law claims all had a
basis in at least a portion of those facts. Accordingly, the dis-

trict court could exercise supplemental jurisdiction over all of the original counterclaims.

### B. *Denial of Leave to Amend*

Outland also contests the district court's denial of leave to amend its third-party counterclaims. While the federal courts "should freely give leave [to amend a pleading] when justice so requires," Rule 15(a)(2), a district court may deny leave for a variety of reasons, including undue delay and futility. See *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). We review the denial of leave to amend for an abuse of discretion. See *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010).

The district court applied Illinois substantive law and denied leave to amend. Outland argues now that the district court should have applied Illinois choice of law principles, which it asserts would have led to the application of Minnesota substantive law and a more favorable outcome. Outland also defends six of the seven proposed counterclaims on the merits. (The proposed federal antitrust claim is similar to its feeble predecessors; Outland does not defend it on appeal.) We conclude that the district court did not err by (1) finding that Outland waived its choice of law argument and applying Illinois law, (2) denying leave to add Counts I, II, and III of the proposed amended counterclaims for futility, and (3) denying leave to add Counts IV, V, and VI of the proposed amended counterclaims for undue delay.

#### 1. *Choice of Law*

Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law. See

*Felder v. Casey*, 487 U.S. 131, 151 (1988); *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002). The choice of law issue may be waived, however, if a party fails to assert it. See *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995). For example, in *Lott v. Levitt* we held that a plaintiff who "submitted to Illinois law and relied solely on it" at the motion to dismiss stage had waived his argument for different substantive law raised seven months later. 556 F.3d 564, 567–68 (7th Cir. 2009); see also *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n.1 (7th Cir. 1985). When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009).

In this case, Outland acquiesced to the application of Illinois law. The original counterclaims included alleged antitrust violations under Illinois, Minnesota, and Texas statutes, but Outland made no argument in favor of any particular state's substantive common law. Outland benefitted from Illinois venue law, under which the court invalidated a provision in its contract with Gamesa that provided for venue in Pennsylvania. Outland did not object to the court's later application of Illinois substantive law when deciding its motion for a preliminary injunction and even relied entirely on Illinois law when defending its original counterclaims against Gamesa's motion for judgment on the pleadings.

Outland finally raised the choice of law issue only as this litigation approached the two-year mark and after it had lost on the merits under Illinois law. We do not condone such procedural gamesmanship. Cf. *Lott*, 556 F.3d at 568. With Outland having acquiesced to the application of Illinois law,

the district court did not err by applying Illinois law to the proposed amended counterclaims.

### 2. *Futility*

The district court denied leave to amend five of Outland's seven proposed amended counterclaims based on futility. We address only Counts I, II, and III, alleging various torts for interference with Outland's acquisition by Duke. (We affirm denial regarding Count VI on the alternate ground of undue delay. We need not address the undefended federal antitrust claim.)

"District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Outland's proposed amended counterclaims for tortious interference with contract, tortious interference with prospective economic advantage, and "prima facie tort" arise from the same alleged conduct and injury. Outland claims that Gamesa's breach letter based on the OSHA penalties was sent to disrupt the ongoing negotiations with Duke for the complete acquisition agreement and fleet services agreement, focusing on the alleged $15 million reduction in value of the closed complete acquisition agreement.

An action for tortious interference with contract requires the plaintiff to prove that the defendant induced a third par-

ty to breach a contract. See *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989); *Philip I. Mappa Interest, Ltd. v. Kendle*, 554 N.E.2d 1008, 1011 (Ill. App. 1990). Outland has not alleged any breach, either of the original or the amended agreement with Duke. It complains only that Gamesa's alleged interference lowered the value of the complete acquisition agreement, which was still being negotiated at the time Gamesa sent its letter. Because Outland did not allege a breach by Duke, amendment of this claim would have been futile. [1]

The elements of a claim for intentional interference with prospective economic advantage are different. A plaintiff must allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.'" *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133–34 (Ill. 2001), quoting *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996). The district court determined this claim was not viable be-

---

[1] Two additional points warrant brief attention. First, the district court based its futility determination in part on Outland's allegation that Gamesa had knowledge of negotiations but not the exact terms of the final amended agreement. We doubt that complete knowledge of details is necessary, but we need not consider the exact level of knowledge required because Outland did not allege a breach. Second, Outland describes its understanding with Duke regarding the fleet services agreement as a "commitment" but not a contract. The district court correctly noted that a vague "commitment" is not a sufficient stand-in for a valid contract. See, e.g., *HPI Health Care Servs.*, 545 N.E.2d at 676–77 (tortious interference with contract protects plaintiff's contractual rights).

cause (1) Outland alleged only a temporal connection between Gamesa's letter and the negotiations rather than knowledge, (2) Gamesa's alleged interference did not result in a complete termination of Outland's relationship with Duke, and (3) Gamesa's activity was protected because it was acting as a commercial competitor. We find each of these reasons problematic, but we affirm on another ground.

Finding futility based on the first and third grounds would raise the plausibility requirement of *Twombly* too high. See generally 550 U.S. at 555, 570. While the temporal connection between the Duke negotiations and Gamesa's breach letter alone raises a plausible inference of knowledge, Outland additionally alleged that Duke informed Gamesa about the ongoing negotiations after the original partial acquisition. Outland also plausibly alleged that Gamesa had a bad-faith motive for its actions rather than a good-faith motive of genuine competition.

The second ground—that the relationship between Outland and Duke was merely impaired but not terminated—presents a close question of state law. It is possible that Illinois courts would require a complete termination of the prospective relationship as the district court did in this case, but most Illinois cases on the subject involve an employee's suit against an employer for a rejection from another job, which is necessarily an all-or-nothing proposition. See, e.g., *Anderson*, 667 N.E.2d at 1300 (stating that firm job offer can be basis for prospective economic advantage claim, but "leading candidate" after first interview does not have a reasonable expectancy). Here, Outland's expectancy did ripen into an acquisition by Duke, but only after it allegedly suffered a significant drop in value for which Outland blames Gamesa.

And Outland might have benefitted even more from the never-consummated fleet services agreement; that potential relationship with Duke was entirely terminated.[2]

Nevertheless, Outland's claim still would have failed under Illinois law because it did not allege that Gamesa interfered improperly by communicating with Duke. "Actions that form the basis of a tortious interference claim must be directed at third-party business prospects." *F:A J Kikson v. Underwriters Laboratories, Inc.*, 492 F.3d 794, 800 (7th Cir. 2007), citing *Galinski v. Kessler*, 480 N.E.2d 1176, 1180 (Ill. App. 1985). Gamesa did not send the letter to Duke, and Outland alleged only that Gamesa made a competing offer during its prior communications with Duke. Assuming, as we must, that Gamesa's breach letter was directed at lowering the value of Outland in bad faith, the proper cause of action would be different. (Outland opted to bring claims for promissory estoppel and breach of fiduciary duty, but a bad-faith claim of breach would often itself be a breach of contract.) Without any allegedly improper action directed to the relevant third party, this claim must fail. Cf. *F:A J Kikson*, 492 F.3d at 800–01 (analyzing four communications between defendant and third parties); *Voyles*, 751 N.E.2d at 1134 (considering reports made by defendant to credit agencies). Thus, amendment would have been futile.

Turning to the generic claim for "prima facie tort," Outland concedes that this vaguely defined cause of action has not been recognized under Illinois law. Outland makes much

---

[2] While a "commitment" is not a contract, see n.1 *supra*, it can be a reasonable expectancy for purposes of tortious interference with prospective economic advantage.

of a parenthetical comment in a decision of this court: "Some
states, though not Illinois (not yet anyway), recognize an an-
imal called 'prima facie tort,' a catchall for harmful inten-
tional misconduct that eludes the familiar categories."
*Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1042–43
(7th Cir. 1999) (internal citation omitted). That comment did
not implicitly predict that Illinois courts would adopt the
new tort. Fifteen years later they still have not done so. Fur-
thermore, Gamesa's alleged misconduct does not "elude the
familiar categories." It merely falls outside the two causes of
actions we have already discussed. Amendment to add this
claim also would have been futile.

### 3. *Undue Delay*

Gamesa allegedly misled Outland by saying it expected
to continue using Outland's services when in fact it was
planning to develop in-house maintenance services. Outland
proposed Counts IV and V for promissory estoppel and
breach of fiduciary duty, the latter based on an alleged prin-
cipal-agent relationship. The district court denied leave to
amend to add these claims based on undue delay, reasoning
that Outland should have known about these theories when
it asserted its original counterclaims. The court also denied
leave to amend Count VI, requesting indemnification from
Gamesa for the OSHA penalties, for both futility and undue
delay. We affirm for undue delay alone. While we approach
the concept of undue delay at the pleading stage with some
skepticism, we find no abuse of discretion in this case.

The issue of undue delay generally arises when a plain-
tiff seeks leave to amend deep into the litigation. See, e.g.,
*Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773–74 (7th Cir.
1995) (affirming denial of leave to amend after close of dis-

covery because more discovery would have been needed). The underlying concern is the prejudice to the defendant rather than simple passage of time. *Id*.; see also *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) ("Delay alone is insufficient justification; prejudice to the nonmovant must also be shown."). Although the litigation on Outland's various commercial tort counterclaims was still in the pleading stage, the parties had already invested significant resources in the case. In particular, the district court was cognizant of Gamesa's costs in defeating Outland's motion for a preliminary injunction and was understandably unwilling to grant Outland leave to present new theories.

Outland had been a party for twenty months when it requested leave to amend, and almost six months had passed since its original counterclaims had been dismissed. Outland presented no excuse for omitting these three theories originally, and the unexplained delay looks more like procedural gamesmanship than legitimate ignorance or oversight. Cf. *Doe v. Howe Military School*, 227 F.3d 981, 990 (7th Cir. 2000) ("[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark."). That impression is consistent with the sheer number of original counterclaims and even Outland's desperate arguments before this court, challenging its own attempts to invoke federal jurisdiction. Undue delay is unusual at the pleading stage, see *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) (reversing denial of leave to amend for undue delay at pleading stage where only prejudice to defendant was unsupported allegation of loss of evidence), but there was no abuse of discretion here.

III. *Conclusion*

Despite Outland's perverse contention that its own federal claims were too feeble to invoke jurisdiction, the district court properly exercised federal question and supplemental jurisdiction over the original third-party counterclaims. It also properly applied Illinois substantive law and denied leave to amend Outland's counterclaims based on futility and undue delay. The judgment is AFFIRMED.