In the

# United States Court of Appeals
## for the Seventh Circuit

No. 21-1602

JOSEPH P. ALLEN, IV,

*Plaintiff-Appellant,*

*v.*

BROWN ADVISORY, LLC, and BROWN
INVESTMENT ADVISORY & TRUST COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-cv-4160-RLM-DLP — **Robert L. Miller, Jr.**, *Judge.*

ARGUED JANUARY 6, 2022 — DECIDED JULY 20, 2022

Before SYKES, *Chief Judge*, and ROVNER and SCUDDER, *Circuit Judges.*

SYKES, *Chief Judge*. Joseph Allen granted a financial power of attorney to his daughter Elizabeth Key when he and his wife experienced declining health and he could no longer manage their finances. For several years Key used the power of attorney to make withdrawals from Allen's investment accounts held by Brown Advisory, LLC, and Brown Invest-

ment Advisory & Trust Company, two affiliated investment firms headquartered in Maryland. Five years later Allen revoked the power of attorney and sued the two investment companies in Indiana state court raising contract and fiduciary-duty claims under Maryland law. He alleged that Key's withdrawals (or some of them) were not to his benefit and that the investment companies should not have honored them.

The defendants (collectively "Brown Advisory") removed the suit to federal court. After a procedural skirmish over whether Key was a necessary party, Allen amended his complaint to add his daughter as a defendant. Brown Advisory then moved to dismiss the amended complaint. The district judge granted the motion, reasoning that the investment firm could not be liable for breach of contract because the challenged withdrawals were directed by Key and authorized by her power of attorney. Regarding the fiduciary-duty claim, the judge held that Maryland law does not recognize a separate cause of action for breach of fiduciary duty arising from a contractual relationship. Allen moved for leave to amend his complaint again, but the judge denied the motion.

We affirm, though on somewhat different reasoning. The judge correctly concluded that the power of attorney shields Brown Advisory from liability for breach of contract. But he misapprehended Maryland law regarding claims for breach of fiduciary duty. Just before he issued his dismissal order, the Maryland Court of Appeals clarified that a plaintiff may plead a claim for breach of fiduciary duty even when another cause of action (like breach of contract) is available to redress the conduct. *Plank v. Cherneski*, 231 A.3d 436 (Md.

2020). Still, the power of attorney shields Brown Advisory from liability for breach of fiduciary duty just as it does for breach of contract, so this claim too was properly dismissed. Finally, the judge was well within his discretion to deny Allen's motion to file a second amended complaint. The deadline for amending the pleadings had expired, so Allen had to establish good cause for his late motion. *See* FED. R. CIV. P. 16(b). He did not do so.

## I. Background

Joseph Allen is a native of Crawfordsville, Indiana, a small city northwest of Indianapolis. After graduating Phi Beta Kappa from nearby DePauw University in 1959, he earned a Ph.D. in physics from Yale University in 1965 and embarked on a successful career in the aerospace industry, first with NASA's space program and later with several private companies, the last of which was headquartered in Arlington, Virginia. He retired in 2004.

Shortly after retiring, Allen engaged Maryland-based Brown Advisory as an investment advisor, executing two agreements that are relevant here. Under the first, Allen authorized the company to "supervise and direct invest-ments" for the assets in his Brown Advisory investment accounts. In the second, he established a retirement trust account for which Brown Advisory would serve as the trustee. As of November 2013, Allen's IRA accounts with the firm were valued at approximately $2.3 million (part of about $7.9 million in total assets belonging to Allen and his wife as listed in a summary prepared by Brown Advisory).

In December 2014 Allen and his wife moved to the Grand Oaks Assisted Living Community in Washington, D.C. His

wife was experiencing rapidly advancing dementia, and Allen—who was suffering from alcoholism and mild cognitive impairment—could no longer care for her at their home in the district.

A year before this move, Allen had granted a durable power of attorney to his daughter Elizabeth Key so she could help manage his finances. The July 2013 instrument authorized Key to act in Allen's name for a broad range of financial transactions, including those involving financial institutions, retirement accounts, trusts, real estate, personal and family maintenance, social security, Medicare, and tax matters. It also provided that "any third party who receives a copy of this document may act under it," and further specified that Allen would indemnify third parties for "any claims that arise … because of reliance on this power of attorney."

In November 2014, a month before he moved to Grand Oaks, Allen granted a similarly sweeping but much more detailed durable power of attorney to Key, replacing the earlier one. Like the 2013 instrument, the 2014 version specified that "any third party receiving a duly executed copy of this document may rely on and act under it." The 2014 power of attorney also contained a similar indemnification clause in which Allen agreed to "indemnify and hold harmless any third party from any and all claims because of good faith reliance on this instrument."

Allen's condition worsened at Grand Oaks. He attributes his decline to actions by the facility's physicians placing him on powerful psychotropic drugs that are not meant for patients suffering from active alcoholism. His brother—a physician practicing in Louisville—eventually intervened

and took steps to assist his brother in making changes to his care. In April 2019 Allen moved from Grand Oaks to Wellbrooke of Crawfordsville, an assisted-living facility in his Indiana hometown. The physicians at the new care center took him off the psychotropic medications, and he committed to maintaining his sobriety. With those changes, his condition rapidly improved. Later that month he retained counsel and granted a new financial power of attorney to his brother, revoking the earlier ones he had granted to Key.

The effectiveness of the revocation was contested, and in August 2019 Brown Advisory filed an interpleader action in federal court in Maryland in an attempt to settle the dispute. We steer clear of that controversy because the events relevant here occurred during Allen's time at Grand Oaks, when Key's power of attorney was unquestionably in effect.

In October 2019 Allen sued Brown Advisory in Indiana state court asserting claims under Maryland law for breach of contract and breach of fiduciary duty. (All agree that Maryland law applies.) Brown Advisory removed the case to federal court based on diversity of citizenship. *See* 28 U.S.C. § 1332(a). Allen is a citizen of Indiana, the affiliated Brown Advisory companies are citizens of Maryland, and the amount in controversy exceeds $75,000.

Following removal, Brown Advisory moved to dismiss the action for failure to join Key as a necessary party. *See* FED. R. CIV. P. 12(b)(7). The motion became moot when Allen filed an amended complaint adding Key (a citizen of Washington, D.C.) as a defendant. Allen and Key have since settled, and she is not a party to this appeal.

The chief allegations in the amended complaint concern withdrawals from Allen's accounts at Brown Advisory. He alleges that while he was at Grand Oaks, Key used the power of attorney to direct the withdrawals, many of which were not to his benefit. The challenged transactions include a one-time withdrawal of $125,000 as well as regular withdrawals of $5,000 ostensibly for "incidental expenses" for Allen's wife. Allen further alleges that the withdrawals caused him to incur excess tax penalties of $90,000 per year (for at least two years). By the time Allen left Grand Oaks, his Brown Advisory IRA accounts were valued at less than $600,000.

Allen additionally alleges that his children sold two of his real properties—Key sold one while his son sold the other—and did not fully credit the proceeds to his Brown Advisory accounts. He claims that the sales occurred "with Brown Advisory's participation," although he does not explain what this participation entailed. Finally, Allen alleges that Brown Advisory occasionally declined to take his phone calls, failed to provide him with (unspecified) "specific information" about his accounts "on multiple occasions," and refused to cover unidentified expenses associated with his move to Crawfordsville.

Brown Advisory moved to dismiss for failure to state a claim, *see id*. R. 12(b)(6), arguing that it cannot be liable for breach of contract because its actions were taken at Key's direction and in reliance on her power of attorney. The power of attorney was attached to the amended complaint, and Allen does not dispute that Brown Advisory carried out the complained-of withdrawals at Key's direction. Brown Advisory also argued that Maryland does not recognize a

claim for breach of fiduciary duty as an independent cause of action arising out of a contractual relationship.

Before the judge ruled on the motion, the Maryland Court of Appeals (the state's highest court) issued an important decision clarifying state fiduciary-duty law and recognizing breach of fiduciary duty as a stand-alone cause of action at law. *Plank*, 231 A.3d at 466. Especially relevant here, the court held that a plaintiff may assert a claim for breach of fiduciary duty even when another cause of action is available to redress the same conduct. *Id.* Brown Advisory promptly notified the court and Allen of this development and sent them a copy of the *Plank* decision. But Allen rested on his original briefing and did not explain the significance of *Plank* to the district court.

Two months later the judge granted the motion and dismissed the case. On the contract claim, the judge agreed with Brown Advisory that Key's power of attorney shielded the company from liability. On the fiduciary-duty claim, he accepted the now-obsolete argument that Maryland does not recognize a cause of action for breach of fiduciary duty arising from a contractual relationship. He did not address *Plank*, apparently overlooking the notice from Brown Advisory.

Allen moved to amend his complaint a second time. His proposed second amended complaint sought to implicate Brown Advisory in various other financial decisions made by him or his family. These include allegations that Brown Advisory "did nothing to stop" him from giving a deed of gift to his son and that the company improperly handled information about an unrelated trust not managed by Brown Advisory.

The judge denied leave to amend. First, the motion was late. It came six weeks after the deadline to amend the pleadings had expired. Rule 16(b)(4) of the Federal Rules of Civil Procedure requires "good cause" for a late amendment; the judge ruled that Allen had no good excuse for his tardiness. Alternatively, the judge considered the motion under Rule 15(a)(2), the general rule for amending pleadings. As an independent ground for denying the motion, he held that any further amendment would unduly prejudice Brown Advisory.

## II. Discussion

Allen challenges the dismissal of his amended complaint—both the contract and fiduciary-duty claims—and the denial of his motion to file a second amended complaint. The judge's rulings are subject to different levels of appellate scrutiny. We review the dismissal order de novo, accepting as true the facts alleged in Allen's amended complaint and drawing all reasonable inferences in his favor. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We review the denial of the motion to amend for abuse of discretion. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971); *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011).

## A.  Breach of Contract

To state a claim for breach of contract, Allen had to iden-tify a contractual obligation that Brown Advisory owed him and a breach of that obligation. *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010); *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). The amended complaint alleges that Brown Advisory allowed Key to make with-drawals from Allen's accounts that were not ultimately for his benefit and increased his tax burden.

As an initial matter, Allen struggles to identify a contrac-tual obligation pertinent to his allegations of breach. He points to Brown Advisory's obligation to "supervise and direct investments" in his investment accounts. That provi-sion, however, imposes a contractual duty to manage assets in Allen's accounts, not a duty to restrict withdrawals made by him or his attorney-in-fact. Allen also notes that the company had certain "powers" to manage and protect his retirement trust account. But those seem to be just that— powers to manage a trust—and not an obligation to restrict withdrawals made by those authorized to make them.

Ultimately, however, the contract claim is foreclosed by Key's power of attorney. A third party generally cannot be liable for allowing an action specifically authorized by a power of attorney. *See Vinogradova v. Suntrust Bank, Inc.*, 875 A.2d 222, 228 (Md. Ct. Spec. App. 2005), *abrogated on other grounds by Plank*, 231 A.3d 436; *see also, e.g., Bank IV, Olathe v. Capitol Fed. Sav. & Loan Ass'n*, 828 P.2d 355, 364–65 (Kan. 1992). Here, the power of attorney granted Key the authority to make withdrawals from Allen's accounts. And the instrument expressly invited third parties to rely on it by

promising to indemnify them for actions taken under and in reliance on it.

Allen argues that Brown Advisory had a duty to assess the reasonableness and prudence of Key's withdrawals notwithstanding her power of attorney. No such duty, however, is found in any of the relevant contracts. Indeed, Key's power of attorney approved Brown Advisory's conduct by authorizing Key to withdraw money to the same extent that Allen could. *See Vinogradova*, 875 A.2d at 228; 3 AM. JUR. 2D *Agency* § 79 (2013) ("A financial institution has no duty to determine that the holder of a valid power of attorney is not engaging in self-dealing before honoring a request for a withdrawal of funds in the name of the principal."). It is true that the company might face liability for knowingly assisting Key in perpetrating a fraud against Allen or otherwise breaching a duty she owed to him. *See Bank IV*, 828 P.2d at 364–65; RESTATEMENT (SECOND) OF AGENCY § 312 (AM. L. INST. 1958). But the first amended complaint contains no allegations suggesting that Brown Advisory did any such thing. Accordingly, Key's power of attorney shields Brown Advisory from liability for allowing the complained-of withdrawals.

Moving on from the withdrawals, Allen argues that other allegations in the first amended complaint state a claim for breach of contract. He points first to Brown Advisory's failure to ensure that the proceeds of two real-property sales directed by his children were credited to his accounts. This does not state a claim for breach of contract because Allen has not alleged that the company had any legal duty, let alone a contractual duty, with respect to the property sales. Indeed, he does not even allege that the properties were

under the company's management and provides only the vague remark that the sales occurred "with Brown Advisory's participation."

Finally, Allen points to his allegations that Brown Advisory occasionally failed to take his calls or provide information and refused to cover unspecified expenses associated with his move to Crawfordsville. These sparse allegations do not support a plausible inference that the company breached any contractual obligation. The judge properly dismissed Allen's claim for breach of contract.

## B. Breach of Fiduciary Duty

Until recently Maryland law pointed in different directions about the circumstances under which a plaintiff could plead breach of fiduciary duty as a stand-alone cause of action. The state's intermediate appellate court struggled to interpret *Kann v. Kann*, 690 A.2d 509 (Md. 1997), the once-leading case on the matter, and sometimes held that a breach of fiduciary duty was not cognizable as an independent claim for money damages. *See, e.g., George Wasserman & Janice Wasserman Goldsten Fam. LLC v. Kay*, 14 A.3d 1193, 1219 (Md. Ct. Spec. App. 2011).

In *Plank* the Maryland Court of Appeals clarified the law. The court held that breach of fiduciary duty is a cause of action with three elements: (1) the existence of a fiduciary relationship; (2) the fiduciary's breach of a duty owed to the beneficiary; and (3) harm to the beneficiary. *Plank*, 231 A.3d at 466. And importantly here, a plaintiff can plead the cause of action even when another cause of action, such as breach of contract, is available to redress the same conduct. *Id.* The remedies available, however, are limited to those historically

available for the particular type of fiduciary relationship and breach at issue. *See id.* at 466–67.

As we've explained, *Plank* was decided shortly before the judge issued his decision dismissing Allen's case. Brown Advisory brought the opinion to the judge's attention, sending a copy to Allen and the court. But Allen remained silent on the import of *Plank*, and the judge overlooked it. Nevertheless, our review is de novo, and we may affirm the decision on any ground supported by the record. *Jones v. Cummings*, 998 F.3d 782, 785 (7th Cir. 2021). Now that Maryland's fiduciary-duty law has been clarified, we apply the new understanding to Allen's claim.

A fiduciary relationship arises when one party places special confidence in another who is bound to act for the interest of the first. *See Anderson v. Watson*, 118 A. 569, 575 (Md. 1922); *Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 603 A.2d 1301, 1320 (Md. Ct. Spec. App. 1992). The amended complaint adequately alleges the existence of a fiduciary relationship. Allen gave Brown Advisory money to manage investments on his behalf, thereby imposing on the company the obligation to act for Allen's benefit within the scope of that relationship. *See Travel Comm.*, 603 A.2d at 1320; *see also Green v. H&R Block, Inc.*, 735 A.2d 1039, 1048 (Md. 1999) (explaining that an agent is a fiduciary to his principal within the scope of the agency relationship).

The difficulty for Allen is alleging a breach of a duty within the scope of the fiduciary relationship. A breach would surely arise if, for example, Brown Advisory invested Allen's assets for its own benefit in an act of self-dealing. *See, e.g., SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 194 (1963). The amended complaint does not allege any facts that

suggest self-dealing. Rather, Allen's chief allegation is that the company should not have allowed Key to make certain withdrawals from his accounts. As we've already explained with respect to the contract claim, Key's power of attorney shields Brown Advisory from liability for this conduct. Changing the theory of liability to breach of fiduciary duty does not expose the company to liability because it had no fiduciary obligation to refuse to carry out transactions authorized by the power of attorney.

Allen's other allegations fare no better under the new theory of liability. As to the challenged real-estate sales, Allen does not tell us what role Brown Advisory played in the sales, nor does he even provide allegations allowing us to infer that the properties were within the fiduciary relationship. Likewise, the allegations regarding occasional failures to communicate and to cover unspecified moving expenses are too vague to infer that Allen is entitled to relief. The fiduciary-duty claim was properly dismissed.

**C. Motion to Amend the Pleadings**

Allen also challenges the denial of his motion for leave to file a second amended complaint. Rule 15(a), the general rule for amending pleadings, permits a plaintiff to amend once as a matter of course within certain time limits; after that the plaintiff must obtain the consent of his adversary or the leave of court. FED. R. CIV. P. 15(a). Allen's motion, however, faced an additional hurdle because it came after the deadline for amending the pleadings had expired. *See id.* R. 16(b)(3)(A) (providing that the district court must issue a scheduling order that limits the time to amend the pleadings). Under Rule 16(b)(4), he had to establish "good cause" for the late amendment. A district judge is entitled apply

Rule 16(b)(4)'s heightened standard before turning to Rule 15(a); failure to satisfy either rule is fatal to the motion to amend. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). In this case the judge considered and denied Allen's motion under both Rule 16(b)(4) and Rule 15(a).

We begin with Rule 16(b)(4), which provides that a party seeking to amend the pleadings after the expiration of the deadline in the scheduling order must show "good cause" for the late amendment. The central consideration in assessing whether good cause exists is the diligence of the party seeking to amend. *Id.* at 720; *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005); *see also* FED. R. CIV. P. 6(b)(1) (providing that a district court may extend a missed deadline for "good cause" when a "party failed to act because of excusable neglect").

Allen claims that his proposed second amended complaint was inspired by documents that he had recently obtained from his old law firm (a third party to this litigation). He received the documents in batches, with the last batch arriving about a month before the deadline to amend (and more than two months before he moved to amend). Allen claims that he needed the time to review and understand the documents before moving to amend.

Generally speaking, it is reasonable to conclude that a plaintiff is not diligent when he in silence watches a deadline pass even though he has good reason to act or seek an extension of the deadline. *See Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016); *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 463–64 (7th Cir. 2005). That is what happened here. As the deadline to amend approached, Allen received and

reviewed the documents purportedly inspiring his motion to amend; yet he did not move to amend or seek an extension of the deadline to do so.

Allen further argues that his lateness should be excused because he was locked in discovery disputes with Brown Advisory as the deadline approached. That is not a good excuse either. Allen's motion to amend did not rely on any documents obtained through discovery, nor does he otherwise explain how the discovery disputes frustrated his ability to move to amend earlier. Allen provided no good excuse for his untimeliness, so the judge's decision to deny the motion under Rule 16(b)(4) was comfortably within his discretion.

Though Rule 16(b)(4) alone justifies the denial of Allen's motion to amend, the judge additionally concluded that the motion should be denied under the more lenient standard in Rule 15(a)(2), which provides that "[t]he court should freely give leave [to amend] when justice so requires." As the text indicates, the rule favors amendment as a general matter. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, a district court is within its discretion to deny leave to amend when it has a "good reason" for doing so, such as futility, undue delay, prejudice to another party, or bad-faith conduct. *Liebhart v. SPX Corp.*, 917 F.3d 952, 964 (7th Cir. 2019). Prejudice to the nonmoving party caused by undue delay is a particularly important consideration when assessing a motion under Rule 15(a)(2). *See, e.g., id.* at 965; *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004).

An amended pleading is less likely to cause prejudice if it comes without delay or asserts claims related to allegations asserted in prior pleadings. *See Empress Casino Joliet Corp. v.*

*Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016). Conversely, prejudice is more likely when an amendment comes late in the litigation and will drive the proceedings in a new direction. *See, e.g.*, *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014) (affirming the denial of a motion to amend brought at a late stage that introduced new theories of liability); *Johnson v. Cypress Hill*, 641 F.3d 867, 872–73 (7th Cir. 2011) (similar). Such an amendment will often require significant discovery on new issues.

Allen's proposed second amended complaint sought to take the litigation into new factual territory, implicating Brown Advisory in various financial decisions made by Allen or his family. Those allegations are arguably futile because they appear to rest on the questionable assumption that the company had a duty to stop decisions made by others. In any case, inserting these issues into the case so late in the day would have prejudiced Brown Advisory by driving the litigation in a new direction as discovery on the original issues was nearing completion. Furthermore, once the judge issued his dismissal order—which came after the deadline for amending the pleadings had passed—Brown Advisory withdrew actions it had initiated in other jurisdictions to enforce subpoenas to uncooperative third parties. If the judge had granted Allen's motion to file a second amended complaint, the revived suit would have required Brown Advisory to refile those actions.

Moreover, Allen has not said why he could not have obtained the documents from his own law firm earlier in the litigation. Without any explanation, the proposed second amended complaint looks more like an effort to keep Brown

Advisory locked in litigation rather than an understandable delay beyond Allen's control. *See McCoy*, 760 F.3d at 687.

Resisting this conclusion, Allen points to our precedents explaining that ordinarily a plaintiff whose original complaint has been dismissed for failure to state a claim should be given at least one chance to amend. *E.g.*, *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). Amendment is often warranted under those circumstances because the dismissal order may reveal deficiencies that the plaintiff can rectify with an amended pleading, allowing the dispute to be resolved on the merits. *See, e.g.*, *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). Allen's situation does not fit with those cases, however, because he had already amended once and because the deadline for amending the pleadings had passed. *Adams*, 742 F.3d at 734. It's also worth noting that the rationale of those cases does not apply here because the proposed second amended complaint would have added new theories of liability rather than shored up the deficiency of the allegations in the prior complaint.

Accordingly, the judge justifiably denied Allen's motion to file a second amended complaint under both Rule 15(a)(2) and Rule 16(b)(4). And because Allen's first amended complaint failed to state a claim, the judgment of the district court is AFFIRMED.